(611 P.2d 178)

No. 51,512

STATE OF KANSAS, *Appellee,* v. NICHOLAS PETERS, *Appellant.*

Opinion filed May 23, 1980.

*Jim Lawing,* of Wichita, for the appellant.

*Beverly Dempsey,* Assistant District Attorney, *Robert T. Stephan,* Attorney General, and *Vern Miller,* District Attorney, for the appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

PARKS, J.: Defendant appeals from his conviction of possession of heroin, K.S.A. 1979 Supp. 65-4127a. We reverse.

On February 15, 1979, a search warrant was issued for 1642 S. Volutsia in Wichita, authorizing a search for "an unknown quantity of Preludin [and an] unknown quantity of cocaine." No issue is raised as to the validity of this warrant. Five officers executed the warrant. After they had been in the residence for approximately 1½ hours, defendant knocked on the door, was admitted by one of the officers and searched. This search revealed a tinfoil packet containing heroin. All are apparently agreed that defendant was not the owner or occupant of the residence and that he was not present when the officers arrived to execute the warrant. The officer who testified at trial stated that defendant submitted to the officers' authority as soon as they identified themselves and made no threat or gesture which caused them to fear for their safety. At trial, the heroin was admitted over defendant's objection that it was a product of an illegal search of his person. The sole issue on appeal is the validity of that search.

K.S.A. 22-2509 provides:

"In the execution of a search warrant the person executing the same may reasonably detain and search any person in the place at the time:

"(*a*) To protect himself from attack, or

"(*b*) To prevent the disposal or concealment of any things particularly described in the warrant."

This statute has been held to authorize the search of a person within a residence when the warrant is executed, *State v. Loudermilk,* 208 Kan. 893, 494 P.2d 1174 (1972), and persons standing in the parking area immediately in front of a residence subject to a warrant, *State v. McClelland,* 215 Kan. 81, 523 P.2d 357 (1974). Both cases recognized that our statute was adopted from a similar Illinois provision. Subsequent to *Loudermilk* and *McClelland,* the Illinois statute, in a case virtually identical on its facts to that presented here, was interpreted "not [to] authorize the search of a person on the premises described in the warrant without some showing of a connection with those premises . . . ." *People v. Dukes,* 48 Ill. App. 3d 237, 241, 363 N.E.2d 62 (1977).

Reversal in this case is compelled, however, not simply by adoption of the *Dukes* interpretation of the Illinois statute, but by *Ybarra v. Illinois,* 444 U.S. 85, 62 L.Ed.2d 238, 100 S.Ct. 338 (1979). There, a warrant authorized the search of a tavern and its bartender. In executing the warrant, police also conducted a pat-down search of the customers present in the tavern. The pat down revealed a cigarette pack on one of the customers, Ybarra. A subsequent search of the pack revealed heroin. Adhering to the *Dukes* limitation, the Illinois courts nonetheless upheld the search. The United States Supreme Court reversed.

"It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York,* 392 U.S. 40, 62-63 [, 20 L.Ed.2d 917, 88 S.Ct. 1889, 44 Ohio Ops.2d 402]. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. See *Rakas v Illinois,* 439 U.S. 128, 138-143, 148-149, 58 L.Ed.2d 387, 99 S.Ct. 421; *Katz v United States,* 389 U.S. 347, 351-352, 19 L.Ed.2d 576, 88 S.Ct. 507.

"Each patron who walked into the Aurora Tap Tavern on March 1. 1976. was clothed with constitutional protection against an unreasonable search or an

unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by [the bartender]. Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search [the bartender], it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers." 444 U.S. at 91-92.

The court also rejected an argument that the initial pat-down search was permissible under *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968).

"The *Terry* case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.' Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a pat down to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. See, *e.g., Adams v. Williams, supra* (at night, in high-crime district, lone police officer approached person believed by officer to possess gun and narcotics). Nothing in Terry can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. The 'narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." 444 U.S. at 93-94.

In the present case there was neither probable cause to search defendant for contraband nor a reasonable belief or suspicion that he was armed, even though he knocked on the door of a residence subject to an authorized narcotics search. The heroin should have been suppressed.

Reversed and remanded.