No. 89,572

STATE OF KANSAS, *Appellee*, v. ROBERT D. HILL, *Appellant*.

(130 P.3d 1)

Opinion filed March 17, 2006.

*Korey A. Kaul,* assistant appellate defender, argued the cause and was on the brief for appellant.

*Bobby J. Hiebert, Jr.,* assistant county attorney, argued the cause, and *Stacy Lynn Cunning,* assistant county attorney, and *Ellen H. Mitchell,* county attorney, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Robert D. Hill appeals his convictions of conspiracy to manufacture methamphetamine, manufacturing methamphetamine, and possession of ephedrine. Hill's convictions were previously affirmed by the Court of Appeals. This court granted Hill's petition for review to consider his claim that the trial court erred in denying his motion to suppress evidence obtained by the police after his arrest without probable cause. The decision of the Court of Appeals is affirmed on other grounds.

On July 19, 2000, officers from the Salina Police Department Drug Task Force collected the trash from the curb outside a house at 740 S. Tenth Street in Salina. In the trash, officers found a complete methamphetamine lab and mail addressed to Charles L. Grandpre. Officers preparing the search warrant for the house listed Grandpre and others in the affidavit for the search warrant.

While awaiting judicial authorization for the search warrant, Officer Hanus surveilled the house. Officer Hanus observed a man he later identified as Hill arrive at the house in a car driven by an unidentified woman. Hill, who was not listed in the application for the search warrant, entered the house, and the woman drove away. A few minutes later, a man Officer Hanus later identified as Charles Grandpre arrived at the house in a pickup registered to a Charles Grandpre.

Approximately an hour later, Grandpre exited the house, went next door, briefly talked with the neighbors, then retrieved the mail from the mailbox of the house to be searched and re-entered the house. A few minutes later, Grandpre and Hill left the house and drove away in Grandpre's truck. Hill was driving the truck.

When the two individuals drove away from the house, Officer Hanus was aware that a search warrant had been issued and other officers were in the process of preparing a search plan. As Hill drove away, Officer Hanus decided to follow the truck. Officer Hanus followed Hill to a convenience store where Hill parked and went inside. Grandpre remained in the truck. Officer Hanus did not stop Hill and Grandpre at the convenience store, because his back-up units had not arrived. When Hill left the convenience store and drove to another location, Officer Hanus followed the truck. At some point, Hill stopped the truck in the street and let Grandpre out.

Because he was concerned that the two would separate and get away, Officer Hanus exited his vehicle, drew his gun, ordered Hill out of the truck, and then commanded Hill and Grandpre to lie on the ground. Other officers immediately arrived on the scene. Officer Hanus instructed the other officers to handcuff Hill and Grandpre. The officers then searched Hill and Grandpre for weapons and contraband. No weapons or contraband were found on Hill. At Hill's request, an officer removed Hill's handcuffs.

Grandpre and Hill were separated. After giving Grandpre oral *Miranda* warnings, Officer Hanus first spoke to Grandpre. Grandpre identified Hill and advised Officer Hanus that Hill was his roommate. Officer Hanus then gave Hill the oral *Miranda* warnings and questioned Hill as to whether he lived at 740 S. Tenth

Street. Hill denied that he lived at that address but admitted that he had slept there on the couch the previous night.

Officer Hanus then arrested Hill, placed the handcuffs back on Hill, and searched Hill incident to the arrest. Finding a set of keys in Hill's pocket, Officer Hanus removed the keys and asked Hill which key unlocked the front door of the house. Hill did not initially respond but later, due to Officer Hanus' persistent questioning, Hill showed the officer which key opened the front door of the house to be searched. Officers then transported Hill and Grandpre to the police station. Officer Hanus returned to the house at 740 S. Tenth Street, used the key taken from Hill to open the front door, and participated in the search.

Inside the house, officers detected a strong odor of ether, which is used in manufacturing methamphetamine, and found physical evidence that someone had been manufacturing methamphetamine in the house. The officers also found Hill's wallet and driver's license, some clothing with Hill's name on it, mail addressed to Hill at another address, and a wooden plaque with Hill's name on it. Officer Hanus then returned to the police station, where he again *Mirandized* Hill and Grandpre and then interviewed them separately.

Grandpre stated to Officer Hanus that Hill had been living in his house for approximately 2 weeks and that Hill's bedroom was in the basement. When questioned by Hanus, Hill denied living at 740 S. Tenth Street. Hill admitted that half of his property was in the house searched and the other half of his property was at a different address. Hill admitted to the officer that he used methamphetamine and that the previous night he had observed someone else making methamphetamine at 740 S. Tenth Street. Hill denied any involvement in manufacturing the methamphetamine.

The State prosecuted Hill and his codefendants, Grandpre, Darin Norris, Brian Schmidt, and Scott Cordell. Hill was charged with two counts of manufacturing methamphetamine, one count of conspiracy to manufacture methamphetamine, one count of possession of ephedrine or pseudoephedrine, and one count of being a felon in possession of a firearm. Subsequently Hill filed a motion to suppress his statements and the key found in his pocket. Hill

did not contest the evidence obtained in the search pursuant to the warrant at 740 S. Tenth Street. The district judge found there was probable cause to support Hill's arrest and denied Hill's motion to suppress.

Hill then waived his right to a jury trial. The matter proceeded to a bench trial. Codefendants Grandpre and Norris testified against Hill. The judge found Hill guilty of two counts of manufacturing methamphetamine, conspiracy to manufacture methamphetamine, and possession of ephedrine or pseudoephedrine. The trial judge acquitted Hill, who had a prior felony conviction, of the charge for possession of a firearm that was found during the search of the house.

Hill appealed his convictions and his sentence to the Kansas Court of Appeals. The Court of Appeals affirmed Hill's convictions but reversed his sentences and remanded the matter to the district court for resentencing. *State v. Hill*, No. 89,572, unpublished opinion filed March 11, 2005. This court granted Hill's petition for review on the limited issue of whether the district court should have granted his motion to suppress evidence.

Hill unsuccessfully asserted to the district judge that he was arrested without probable cause when Officer Hanus ordered him to get out of the pickup at gunpoint, handcuffed him, frisked him, and interrogated him. Hill argued to the Court of Appeals that the trial court should have suppressed his statements to the police and the house key found in his pocket because they were obtained during an unreasonable search in violation of his Fourth Amendment rights.

When reviewing a defendant's request to suppress evidence, an appellate court reviews the factual underpinnings using a substantial competent evidence standard. However, the ultimate legal conclusion drawn from those facts is a question of law subject to de novo review. *State v. Jones*, 279 Kan. 71, 73, 106 P.3d 1 (2005). If the facts are undisputed, the question of whether evidence should have been suppressed is a question of law, and this court has unlimited review. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004).

On appeal the State conceded that Hill's arrest was constitutionally infirm and then argued that, under the circumstances, the violation was harmless error. The Court of Appeals addressed Hill's underlying arrest and concluded that Officer Hanus had reasonable suspicion to support an investigatory detention which provided the probable cause for Hill's later arrest. *Hill,* slip op. at 10.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. *Ramirez,* 278 Kan. at 404. A warrantless search is per se unreasonable unless it falls within a clearly recognized exception. A warrantless arrest in a public place does not violate the Fourth Amendment or the Kansas Constitution if the arrest is based on probable cause that the person has committed or is committing a felony. K.S.A. 2004 Supp. 22-2401; *Ramirez,* 278 Kan. at 405. Hill asserts that he was arrested without a warrant or probable cause that he had committed or was committing a felony. Hill argues that under these circumstances, his arrest was unconstitutional and, therefore, his motion to suppress should have been granted and his conviction must be set aside.

## Hill's Arrest

There are four types of police-citizen encounters. The first type is a voluntary encounter, which is not considered a seizure under the Fourth Amendment. *Nickelson v. Kansas Dept. of Revenue,* 33 Kan. App. 2d 359, 362, 102 P.3d 490 (2004). The second type is an investigatory detention or *Terry* stop, in which an officer may detain any person in a public place if the officer reasonably suspects that the person is committing, has committed, or is about to commit a crime. K.S.A. 22-2402(1); see *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). During a *Terry* stop the officer is allowed to frisk the person seized for weapons if necessary for the officer's personal safety. K.S.A. 22-2402(2). The third type of encounter is a public safety stop in which an officer may approach a person to check on his or her welfare when the officer can articulate specific facts indicating a concern for the public's safety. *State v. Vistuba,* 251 Kan. 821, 824, 840 P.2d 511 (1992); *Nicholson,* 33 Kan. App. 2d at 364-65; for cases involving a public

safety search of a home see *State v. Mendez*, 275 Kan. 412, 66 P.3d 811 (2003); *State v. Horn*, 278 Kan. 24, 91 P.3d 517 (2004). The fourth type of encounter between law enforcement officers and citizens is an arrest. K.S.A. 2004 Supp. 22-2401.

The Court of Appeals characterized the initial stop as voluntary because Hill had stopped the truck in the street to let Grandpre out. We note that although Hill voluntarily stopped the truck to let Grandpre out, he was not aware of Officer Hanus' presence. Officer Hanus approached the stopped truck with his gun drawn, ordered Hill out of the truck, commanded Hill and Grandpre to lie on the ground, and had them handcuffed by other officers.

A person is seized when an officer accosts the person and restrains the person's freedom to walk away. A person can be seized without being under arrest, making the encounter an investigatory detention. *State v. Boone*, 220 Kan. 758, 764, 556 P.2d 864 (1976). The Court of Appeals characterization of Officer Hanus' initial contact with Hill as a voluntary encounter is not supported by the record or the law. Under the facts, Officer Hanus' initial contact with Hill was not a voluntary encounter; it was either a *Terry* investigatory detention or an arrest.

Hill argues to this court that the use of drawn guns and handcuffs escalated the stop from an investigatory detention to an arrest. To support this argument Hill relies on *State v. Vandevort*, 276 Kan. 164, 72 P.3d 925 (2003), *State v. Deal*, 271 Kan. 483, 23 P.3d 840 (2001), and *State v. Dang*, 267 Kan. 198, 978 P.2d 277 (1999), for the proposition that handcuffs are the touchstone of a Fourth Amendment analysis. After reviewing each case, we note that the cases cited involve a Fifth Amendment analysis regarding the necessity for *Miranda* warnings in custodial interrogation and do not include a Fourth Amendment analysis regarding when an arrest occurs.

Contrary to Hill's claim, the use of handcuffs does not necessarily convert an investigatory stop into an arrest. In *State v. Baker*, 239 Kan. 403, 405, 409, 720 P.2d 1112 (1986), a police officer, who was en route to an armed robbery, observed a car traveling in the opposite direction. The occupants of the car appeared similar to the description of the robbers. When the officer turned around to

follow the car, the driver parked the car on a side street and turned off the car lights. The officer pulled up behind the car, activated his emergency equipment, and ordered the occupants out of the car. At that point, another officer joined him, frisked the individuals for weapons, then handcuffed them. Subsequently the officers observed a large wad of cash and the barrel of a gun protruding from under the front seat. The officers arrested the occupants of the vehicle, advised them of their *Miranda* rights, and interrogated them on the scene.

The *Baker* court found the initial stop was a *Terry* investigatory detention rather than an arrest, and concluded that the officers had reasonable suspicion to stop the car. After the officers had observed the money and gun in plain view inside the car, they had probable cause to arrest the occupants. *Baker*, 239 Kan. at 409; see also *City of Topeka v. Grabauskas*, 33 Kan. App. 2d 210, 219-20, 99 P.3d 1125 (2004) (concluding that police officers properly stopped defendant for public safety function but did not have reasonable suspicion to support handcuffing defendant and throwing her to the ground causing defendant's broken arm); *State v. Nugent*, 15 Kan. App. 2d 554, 564, 811 P.2d 890 (1991) (upholding *Terry* stop where officer ordered defendant out of the car at gunpoint and handcuffed him before searching him for weapons).

Pursuant to statute, a person is considered to be under arrest when he or she is physically restrained or when he or she submits to the officer's custody for the purpose of answering for the commission of a crime. K.S.A. 22-2202(4); K.S.A. 22-2405(1). This court has recognized a range of actions to establish when an arrest occurs.

In *State v. Abbott*, 277 Kan. 161, 162, 83 P.3d 794 (2004), police were told by a confidential informant (CI) that the defendant would be traveling to a specified place in a two-tone van at a set time to purchase drugs from a certain individual. The officer was aware that the individual had previously sold drugs, so the officer set up surveillance at the location specified by the CI. The two-tone van arrived as expected and left a short time later. The officer followed the van, stopping it a short distance from the house and ordering the defendant and his companions to exit the van. The

officer did not handcuff the occupants, but requested identification from each of them. After verifying that Abbott was one of the occupants the officer searched the van and found drug parapher-nalia. The *Abbott* court concluded that the officer properly arrested Abbott after the officer stopped the van and verified that Abbott was inside. 277 Kan. at 166.

In *Ramirez,* 278 Kan. 402, the defendant was in a bar known for drug activity. A sheriff's deputy, who knew the defendant, observed that the defendant was under the influence, uncharacteristically avoiding eye contact with him, acting nervous, and holding a piece of torn plastic. The deputy asked the defendant what she had in her hand. When she failed to respond, the deputy grabbed the defendant's wrist and asked her to open her hand. The open hand revealed cocaine in the plastic bag. The deputy seized the bag, handcuffed the defendant, and removed her from the bar. Al-though the State did not contest the trial court's finding that the defendant was arrested when the deputy grabbed her wrist, the *Ramirez* court analyzed the issue as an arrest rather than an inves-tigatory detention. *Ramirez,* 278 Kan. at 405-07. The *Ramirez* court concluded that the totality of the circumstances established the necessary probable cause for the defendant's arrest. *Ramirez,* 278 Kan. at 408-09.

In *State v. Payne,* 273 Kan. 466, 468-69, 473, 44 P.3d 419 (2002), this court concluded that the defendant had been arrested when officers pulled him out of a car, ordered him on the ground, and handcuffed him at gunpoint. Likewise, in *State v. Mayberry,* 248 Kan. 369, 375, 807 P.2d 86 (1991), this court concluded that the defendant was subjected to a warrantless arrest when officers or-dered him from a vehicle at gunpoint, handcuffed him, and trans-ported him to the police station, even though the police had not informed the defendant that he was under arrest.

The facts in this case are similar to those in *Baker, Nugent, Payne,* and *Mayberry.* However, there is a contradiction as to when the arrest occurred in those cases. The more recent cases, *Payne* and *Mayberry,* support the conclusion that Officer Hanus arrested Hill when he ordered him from the truck at gunpoint and hand-cuffed him. *Baker* and *Nugent,* on the other hand, support the

Court of Appeals' conclusion that the initial detention was an investigatory stop. *Abbott* and *Ramirez* support Hill's assertion that his initial encounter with Officer Hanus was an arrest even though each of those cases involved less restraint on the defendant's freedom than that imposed on Hill when he was handcuffed at gunpoint.

Officer Hanus testified that he did not plan to arrest Hill when he ordered him out of the truck and that he did not believe Hill was under arrest at that time. Officer Hanus' subjective intentions are supported by the fact that he released Hill from the handcuffs upon Hill's request when the officers did not find contraband or weapons on Hill. Nevertheless, the test for whether there was an arrest is not based on the officer's subjective belief. Rather, the test for whether a seizure and an arrest has occurred is based on what a reasonable person would believe under the totality of the circumstances surrounding the incident. *State v. Morris*, 276 Kan. 11, 18-19 72 P.3d 570 (2003). We conclude that the initial encounter between Hill and Officer Hanus was an arrest, therefore the next step in our analysis is whether, at that point, Officer Hanus had probable cause to arrest Hill.

### Probable Cause to Arrest

"[T]he Fourth Amendment permits a duly authorized law enforcement officer to make a warrantless arrest in a public place even though he had adequate opportunity to procure a warrant after developing probable cause for arrest." *United States v. Watson*, 423 U.S. 411, 426-27, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976); see *State v. Platten*, 225 Kan. 764, Syl. ¶ 2, 594 P.2d 201 (1979). A suspect may also be arrested without a warrant in the following circumstances:

"(b) The officer has probable cause to believe that a warrant for the person's arrest has been issued in this state or in another jurisdiction for a felony committed therein.

"(c) The officer has probable cause to believe that the person is committing or has committed:

(1) A felony; or

(2) a misdemeanor, and the law enforcement officer has probable cause to believe that:

(A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;

(B) the person may cause injury to self or others or damage to property unless immediately arrested; or

(C) the person has intentionally inflicted bodily harm to another person.

"(d) Any crime, except a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the person in the officer's view." K.S.A. 2004 Supp. 22-2401.

Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. *Abbott*, 277 Kan. at 164. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to assure a person of reasonable caution that an offense has been or is being committed and the person being arrested is or was involved in a crime. The officer's knowledge must be based on reasonably trustworthy information. To determine whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences drawn therefrom, and any other relevant facts, even if they may not be admissible at trial. *Abbott*, 277 Kan. at 164. We view the totality of the circumstances by evaluating the information from the standpoint of an objectively reasonable police officer. *Ramirez*, 278 Kan. at 407. It is important to note that mere proximity to others who are independently suspected of criminal activity, without more, does not establish probable cause. *Ramirez*, 278 Kan. at 406.

In *State v. Peters*, 5 Kan. App. 2d 44, 611 P.2d 178 (1980), the Court of Appeals considered whether it was constitutional to search a person who came to a residence while officers were in the process of executing a search warrant. Peters, who was not the occupant or owner of the residence, arrived at the residence after the officers had been there for approximately 1½ hours. Peters knocked on the door, and the officers admitted him into the house being searched. Upon entering, Peters was immediately arrested and acquiesced to the officers' authority. Peters did not threaten the officers physically or verbally. Officers searched Peters and found heroin.

The *Peters* court noted that K.S.A. 22-2509 authorizes officers executing search warrants to detain and search any person in the place at the time of the search to protect themselves from attack or to prevent the disposal or concealment of things described in the warrant. However, the *Peters* court concluded that K.S.A. 22-2509 is limited by the Fourth and Fourteenth Amendments which protect the " ' "legitimate expectation of privacy" of persons, not places.' " 5 Kan. App. 2d at 45 (quoting *Ybarra v. Illinois*, 44 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 [1979]). Because the expectation of privacy is tied to an individual rather than a place, the search of a person on the premises being searched must be supported by a showing that the person had a connection to the premises or that there was probable cause particularized to the person. 5 Kan. App. 2d at 45. If there is no such probable cause, the officers are authorized to conduct a *Terry* pat-down search for weapons when there is a reasonable belief or suspicion that the person possesses a weapon. Finding no probable cause particularized to Peters and no reasonable suspicion that Peters possessed a weapon, the *Peters* court concluded that the search was unconstitutional and reversed Peters' conviction. 5 Kan. App. 2d at 46.

Officer Hanus did not know Hill or Grandpre but knew the truck was registered to a Charles Grandpre. Officer Hanus had previously observed Grandpre talk to a neighbor and get the mail for the house to be searched. Grandpre's name was on some of the mail previously found in the trash, so, when obtaining the search warrant, police expected someone named Grandpre to be a resident of the house to be searched. Officer Hanus did not attempt to stop and detain Hill and Grandpre until Grandpre got out of his truck and it appeared that Hill and Grandpre were separating. Based on this information, Officer Hanus had probable cause to believe that Grandpre was a resident at 740 S. Tenth Street and responsible for manufacturing methamphetamine there.

However, the same probable cause analysis for arresting Grandpre does not apply to Hill. Officer Hanus did not expect Hill to be a resident at 740 S. Tenth Street. Although several other individuals were named in the search warrant for the house, Hill's name was not included in the search warrant. Officer Hanus testified that

Hill was not a person they anticipated to be a resident in the house. Likewise, Officer Hanus had no reason to believe that Hill was involved in the manufacturing of methamphetamine at 740 S. Tenth until Grandpre was arrested and informed the officer that Hill was his roommate. Officer Hanus' probable cause determination to arrest Hill was based the fact that Hill was with Grandpre and Grandpre's statement that Hill was his roommate. It is important to note that Grandpre's statement did not occur until after Officer Hanus ordered Hill out of the truck at gunpoint and handcuffed him. We conclude that there was no probable cause for Hill's arrest.

The Court of Appeals did not analyze this issue as a warrantless arrest. Rather, the Court of Appeals limited its analysis to a *Terry* stop. Relying on *Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), the Court of Appeals concluded that there was reasonable suspicion to support an investigatory detention of Hill. In *Summers*, the United States Supreme Court held that officers executing a search warrant at a house could detain the resident during the search and arrest the resident without a warrant after finding drugs in the house. 452 U.S. at 693, 704-05. The *Summers* Court concluded that the restraint of the defendant's freedom was less intrusive than the search of his home, which was based on probable cause. 452 U.S. at 701. The *Summers* Court also justified the detention because it prevented flight in the event incriminating evidence was found and minimized the risk of harm to the officers executing the search warrant. 452 U.S. at 702.

*Summers* is distinguishable from this case because Hill and Grandpre were not detained at the house while the search warrant was executed. Rather, Hill and Grandpre were arrested without warrants prior to the search and detained at the police station prior to the search of the house. The facts that form the basis for the *Summers* Court's decision do not exist in this case. The restraint on Hill's freedom during the search was not less intrusive than the search itself. Prior to the execution of the search of the house, Hill had been arrested and was in police custody at the police station. Hill was not detained at the house until evidence was found. Hill's

arrest occurred before the officers entered to search the house or found any evidence in the house.

Similarly, Hill's arrest did not prevent the risk of flight in the event incriminating evidence was found during the subsequent search of the house. Hill's arrest prevented flight regardless of whether any incriminating evidence was found in the house.

Finally, arresting Hill away from the house was unnecessary to minimize the risk of harm to the officers executing the search warrant. The officers knew that Hill and Grandpre were not at the house. Had Hill and Grandpre returned to the house while the officers were executing the search warrant, the situation would have been aligned with that in *Summers*, justifying a detention at that point. The Court of Appeals reliance on *Summers* was misplaced.

K.S.A. 22-2402 provides:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, such officer may take and keep it until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person."

" 'Reasonable suspicion is a less demanding standard than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors, quantity and quality, are considered in the totality of the circumstances that must be taken into account when evaluating whether reasonable suspicion exists.' " *Morris*, 276 Kan. at 24.

In *Morris*, the defendant was approached by officers while he was parked near a lake. Earlier in the day, officers had seen Morris talking to a woman who was under surveillance while officers attempted to secure a search warrant for her house to find evidence

of a methamphetamine lab. The officers were familiar with Morris and knew that he had cooked methamphetamine at the lake in the past. After pulling in behind Morris' truck and activating their emergency lights, the officers approached Morris' truck and smelled a chemical odor associated with making methamphetamine. The officers removed Morris from the truck, searched the truck, and found a nearly complete methamphetamine lab. Morris argued that his conviction should be overturned because the evidence from his truck should have been suppressed. This court agreed, concluding that the officers did not have the reasonable suspicion necessary to support an investigatory detention when they activated their emergency lights and approached Morris' truck. 276 Kan. at 25-26. The *Morris* court relied on the deputy's statement that he made contact with Morris because he had seen Morris talk to the woman who was the target of a search warrant for a methamphetamine lab. The deputy had not seen Morris engage in any illegal conduct at that time and did not state how long it had been since Morris had previously manufactured methamphetamine at the lake.

On the other hand, in *State v. Hardyway*, 264 Kan. 451, 958 P.2d 618 (1997), this court reached the opposite result. Police were conducting surveillance on several residences, attempting to establish probable cause for a search warrant. The officers were advised that a passenger in a brown Cadillac had entered one of the residences, remained for a short period of time, and returned to the car. An officer stopped the Cadillac for a traffic violation and noticed that Hardyway was not wearing a seatbelt. The officer asked Hardyway to exit the vehicle and speak with him at the rear of the car. Hardyway complied. The officer advised Hardyway that he believed Hardyway had just purchased drugs and asked for permission to search Hardyway. Hardyway consented, and the officer found drugs in Hardyway's pocket. Hardyway argued that the evidence should have been suppressed. The majority of the *Hardyway* court, concluded that there was reasonable suspicion to support Hardyway's initial detention when the officer asked Hardyway to exit the car and prior to Hardyway's consent to be searched. 264 Kan. at 459-60.

However, two justices dissented, concluding that the officer did not have reasonable suspicion to support Hardyway's initial detention prior to his consent. The dissenting opinion noted that the officers did not have sufficient evidence to establish probable cause for searching the residences to determine if they were, in fact, drug houses. 264 Kan. at 460, 465 (Lockett, J., dissenting).

In *State v. Griffin*, 31 Kan. App. 2d 149, 151, 156, 61 P.3d 112, *rev. denied* 275 Kan. 966 (2003), the Court of Appeals concluded that there was reasonable suspicion to conduct an investigatory detention of a car parked outside a residence that was being searched pursuant to a search warrant for drugs. The car pulled up in front of the residence at about 11 p.m. None of the surrounding businesses were open at that time of night. The defendant, a passenger in the car, was a known drug user. In addition, officers had arrested a person in another vehicle for possession of cocaine at the same residence that night.

Likewise, the Court of Appeals concluded that there was reasonable suspicion for an investigatory detention in *State v. Keene*, 8 Kan. App. 2d 88, 650 P.2d 719, *rev. denied* 232 Kan. 876 (1982). In *Keene*, the police were conducting surveillance to establish the probable cause for a search warrant based on information from reliable informants. The officers observed a man get out of a car, go in the house for a short time, and return to the car with the defendant, who was carrying a sleeping bag. The officers followed the car and later stopped the car to conduct a " 'field investigation.' " 8 Kan. App. 2d at 89. After observing two open containers of beer, the officers asked if they could search the car, and the driver consented. The officers found marijuana in the sleeping bag the defendant had been carrying.

We find the facts in this case more analogous to the facts in *Morris*, 276 Kan. 11. Officer Hanus knew less about Hill than the officers knew about Morris. In *Morris*, the officers were familiar with Morris and knew that he had cooked methamphetamine at the lake on another occasion. In this case, Officer Hanus did not know Hill and did not expect him to be connected with the house at 740 S. Tenth Street. Although Hill was observed at the residence while officers waited for a search warrant and Morris was merely

seen talking to someone under surveillance for a possible search warrant, we conclude that when the totality of the circumstances in this case are compared with the facts in *Morris*, the officers lacked reasonable suspicion to detain Hill when Officer Hanus ordered Hill to exit the truck at gunpoint and handcuffed him. Accordingly, we find that Hill's detention was not supported by reasonable suspicion and, therefore, the trial court erroneously admitted Hill's statements and the key found in his pocket.

We conclude that Hill was arrested without probable cause and illegally detained without reasonable suspicion. However, such a determination does not automatically preclude Hill from being prosecuted. A court is not divested of jurisdiction because the defendant has been unlawfully arrested. Even when the initial arrest is without probable cause, if the taint of the illegal arrest is sufficiently separate from the statement or evidence obtained, the evidence may be admitted. *State v. Weis*, 246 Kan. 694, 697, 792 P.2d 989 (1990).

Hill made some statements to Officer Hanus, and Officer Hanus seized the house key from Hill's pocket at the scene of Hill's arrest. Evidence obtained from the defendant at the time of the defendant's unlawful arrest or illegal detention must be suppressed. *State v. McKeown*, 249 Kan. 506, 508, 515, 819 P.2d 644 (1991). In *McKeown*, the defendant was stopped by an officer on a rural gravel road late in the evening. The officer had been dispatched to the area because a nearby resident contacted police about an unfamiliar green pickup truck parked alongside the road. Although the resident did not report any criminal activity, the officer had been dispatched to check on the truck. After stopping the truck, the officer detected the odor of burning marijuana and asked the defendant to step out of the vehicle. When the defendant exited the truck, the officer observed an open can of beer and arrested the defendant for illegally transporting liquor. A search incident to the arrest revealed marijuana and drug paraphernalia in the defendant's pockets. Although the State argued that the officer had conducted a proper *Terry* stop, the *McKeown* court held that there was no reasonable, articulable suspicion to stop the defendant's vehicle because the officer testified that he had observed no wrong-

ful conduct and none had been reported. Because McKeown was illegally detained and arrested, the *McKeown* court suppressed the evidence seized from McKeown. 249 Kan. at 515. The *McKeown* analysis applies to this case, thus, Hill's statements at the scene of his illegal arrest and the key from his pocket must be suppressed.

In addition to the statements Hill made during his illegal arrest, Hill made incriminating statements during his subsequent interrogation at the police station. The admission or suppression of these later statements requires a different analysis because the statements did not occur simultaneously with the arrest. We have set forth the following four factors to be considered in determining whether a confession obtained following an arrest without probable cause is admissible: "(1) whether *Miranda* warnings were given, (2) the proximity of the illegal arrest and the statement or confession, (3) the purpose and flagrancy of the officer's misconduct, and (4) other intervening circumstances." *Weis*, 246 Kan. at 698.

In *Weis*, officers were conducting surveillance at a house as a part of a drug investigation of Weis' husband and another man. An officer followed Weis' husband and his friend when they left the house and arrested them. To protect evidence thought to be in the house, the officer secured the house until a search warrant could be obtained. A couple of hours later, Weis arrived at the house and was stopped by the officer, who told her that he would arrest her if she attempted to enter the house before the search warrant was obtained. The officer then instructed Weis to go to the police station to get her husband and arranged a police escort to take her to the police station.

At the police station, officers placed Weis in a locked room, searched her purse and confiscated her car keys. Later, an officer gave Weis *Miranda* warnings but refused her request for an attorney or to use the phone. Nearly 4 hours after she arrived at the police station, officers escorted Weis back to her house and held her in custody while other officers executed the search of the house. Officers denied Weis' requests to use the phone at her house.

During the search officers found marijuana and drug paraphernalia in the house. After Weis admitted that some of the contra-

band was hers, officers arrested her and allowed her to contact an attorney. Prior to trial Weis filed a motion to dismiss the charges against her. At the hearing on the motion the officers acknowledged that they did not have probable cause or reasonable suspicion to arrest Weis until she admitted possessing the marijuana and drug paraphernalia. The district judge determined that Weis' arrest was illegal, the taint of the illegal arrests had not been purged or diluted, and refused to admit the evidence. The State appealed.

The *Weis* court evaluated the four factors to determine whether Weis' confession should have been suppressed. Although the officers had advised Weis of her *Miranda* rights, the *Weis* court held that Weis' statements were obtained by the exploitation of her unlawful arrest and suppressed them. 246 Kan. at 699. In reaching this conclusion the *Weis* court noted that Weis had been subjected to 4 hours of unbroken custodial interrogation, the police committed misconduct when they denied her requests for an attorney and to use the phone, and there was no intervening event between Weis' illegal detention at the police station and her statement at the house. 246 Kan. at 698.

Although there is no evidence that officers denied Hill's request for an attorney or prevented Hill from using the phone in this case, the facts in *Weis* are similar to the facts in this case. Like *Weis*, the only factor that weighs in favor of attenuating the unlawful arrest and admitting Hill's statements is the fact that Officer Hanus *Mirandized* Hill before Hill made the statements.

The three remaining factors weigh in favor of suppressing Hill's statements. During the nearly 9 hours between Hill's unlawful arrest and his interrogation at the police station after the search of the house was completed, Hill was held in police custody. Like Weis, Hill was not free to leave. The purpose of Officer Hanus' seizure was to prevent Hill and Grandpre from separating and to preserve evidence. The officer in *Weis* also sought to preserve evidence. Nevertheless, Officer Hanus' actions in ordering Hill out of the truck at gunpoint and handcuffing him were flagrant based on the facts of the case. Finally, there are no intervening events to break the connection between Hill's unlawful arrest and his later statements. During the 9 hours between Hill's arrest and his in-

terrogation, Officer Hanus executed the search warrant at 740 S. Tenth Street and interrogated Grandpre. Both of these activities provided Officer Hanus with information and reason to believe Hill had been involved in manufacturing methamphetamine at 740 S. Tenth Street. Thus, Hill's statements resulted from the exploitation of the unlawful arrest.

We conclude that Hill's statements and the key from his pocket were tainted by his unlawful arrest and therefore inadmissible. However, before reversing Hill's conviction, we must determine whether the erroneous admission of the evidence in violation of Hill's Fourth Amendment rights was harmless error.

## Harmless Error

An error of constitutional magnitude is serious and may not be held harmless unless the appellate court can declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial. When the evidence of guilt is direct and overwhelming, the erroneous admission of evidence in violation of a constitutional right could not have affected the result of the trial, and the error is harmless. *State v. Hebert*, 277 Kan. 61, 96, 82 P.3d 470 (2004).

At trial two codefendants, Grandpre and Darin Norris, testified against Hill. Grandpre testified that he did not make methamphetamine at his house but that Hill admitted making methamphetamine to help with the rent. Norris testified that Hill was teaching him how to make methamphetamine and that Hill had performed the final gassing process at the house on Tenth Street. With this direct evidence of Hill's involvement in manufacturing methamphetamine, the trial court did not have to rely on Hill's statements or the key from Hill's pocket to infer that Hill was responsible because he was a resident of the house. In fact, the trial court did not rely on this evidence when the judge found Hill guilty, stating, "I don't care who lived at 740 South Tenth. Doesn't make any difference to me. That's just the site of the crime."

Hill was arrested without probable cause during his initial encounter with Officer Hanus when he was ordered out of the truck at gunpoint and handcuffed. Thus, the trial court erroneously de-

nied Hill's motion to suppress that evidence, and the Court of Appeals erred in affirming the trial court's decision. However, Hill's conviction is affirmed because the error in admitting that evidence was harmless. We conclude beyond a reasonable doubt that the erroneous admission could not have affected the result of the trial. Accordingly, any error in admitting Hill's statements or the key was harmless error.

The Court of Appeals is affirmed on other grounds. Convictions affirmed.

LOCKETT, J., Retired, assigned▌