NOT DESIGNATED FOR PUBLICATION

No. 114,353

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA,
*Appellant*,

v.

JESSE KENNEDY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed May 27, 2016.
Reversed and remanded.

*Jan Jarman*, assistant city attorney, for appellant.

No appearance by appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam*: A law enforcement officer may arrest any person he or she observes committing a misdemeanor or felony. K.S.A. 22-2401(d). Jesse Kennedy was followed by police and observed committing a reckless driving offense, a misdemeanor. Kennedy was stopped, arrested, and eventually charged with several crimes including battery on a law enforcement officer. He filed a motion to suppress the evidence obtained after his arrest on the basis that the officer lacked probable cause to arrest him. The district court granted the motion. The City of Wichita (City) then filed this interlocutory appeal. Because we find that the district court erred in granting Kennedy's motion to suppress, we reverse and remand for further proceedings.

1

Detective Christian Cory was driving home from work in an unmarked police car when two vehicles driving the opposite direction caught his attention. One of the vehicles, a large white SUV, was swerving and driving aggressively making it appear as though "[s]omething was going on between [the] two vehicles." Cory continued to watch the approaching cars and saw the white SUV travel down the road straddling the lane lines and drive in a way that led Cory to believe "there was a disturbance of some type." Cory then turned his vehicle around to follow the white SUV. Once he was behind the SUV, Cory observed additional traffic violations including an unsafe lane change, using the center turn lane to pass another car, and reckless driving. Because Cory was in an unmarked car, he radioed in to dispatch and requested backup rather than immediately conducting a traffic stop.

Cory eventually followed the vehicle to the parking lot of an apartment complex. At that point, Cory made the decision to initiate a stop despite the fact that backup had not yet arrived because he was concerned the occupants of the car would enter an apartment making contact with them more difficult. Since he did not have the benefit of lights or a siren, Cory waited for the vehicle to stop, then exited his car, drew his gun to threat-ready level, and yelled "[p]olice." As Cory approached, he issued verbal commands for the passengers in the vehicle to "[s]how me your hands" and to stay in the vehicle.

When Cory reached the vehicle, he made contact with the driver, Kennedy, and asked for his driver's license. Cory then put his gun away and tried to deescalate the tone of the encounter. As Kennedy reached for his driver's license, Cory noticed that Kennedy's eyes were bloodshot, he smelled of alcohol, and he had difficulty getting his license.

After Kennedy handed Cory his license, Cory asked all three occupants of the vehicle to put their hands up. Cory then asked the passengers to provide identification as well. The passengers started to comply, but the passenger in the front seat changed his mind and ultimately refused. Soon after that, the remaining occupants in the vehicle became noncompliant—they removed their hands from the seats and began talking over Cory's commands.

After Kennedy took his hands down from the dash, he reached for Cory and grabbed his driver's license out of Cory's hand. Cory reached toward Kennedy to retrieve the license and Kennedy hit his hand out of the way. At that point, Cory felt that he had lost control of the situation and became worried for his safety.

As Cory continued to attempt to control the situation, Kennedy made a move to get out of the vehicle. Kennedy put his hands in Cory's face forcing him to take a step back away from the car. Cory cleared Kennedy's hands out of his face only to have Kennedy bring them forward again. Cory then told Kennedy he was under arrest. Kennedy continued to be noncompliant so Cory punched him in the face once, knocking him back into the vehicle. Cory then attempted to handcuff Kennedy, but Kennedy continued to move around and resist. Cory hit Kennedy several more times as he attempted to subdue Kennedy. After five or six strikes Kennedy complied and Cory was able to handcuff him.

Soon after Kennedy was subdued, additional officers arrived at the scene to assist Cory. Kennedy was then taken into custody.

Kennedy was charged with battery of a law enforcement officer, assault, interference with law enforcement, reckless driving, driving under the influence, and three counts of unsafe lane change. Kennedy pled no contest to all but the DUI charge which was dismissed by the municipal court. Kennedy then appealed to the district court.

3

At the district court, Kennedy filed a motion to quash arrest and suppress evidence. In his supporting memorandum, Kennedy argued that Cory arrested him, without probable cause, when Cory approached his vehicle with gun drawn and demanded to see the vehicle occupants' hands. After a hearing, the district court granted the motion, finding that the "City has not met its burden."

The City then filed this interlocutory appeal.

ANALYSIS

The City argues that the district court erred when it granted Kennedy's motion to suppress "all evidence flowing from [his] illegal arrest." When reviewing a district court's grant of a motion to suppress, appellate courts utilize a bifurcated standard. Appellate courts review district courts' factual findings to determine whether they are supported by substantial competent evidence. The legal conclusions drawn from the application of the law to the facts are reviewed de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the facts material to a district court's decision are not in dispute, the question of whether to suppress is one of law over which this court exercises unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014). The facts related to this motion are not in dispute.

This case is complicated by the fact that the City's brief on appeal and Kennedy's memorandum in support of his motion to suppress seem to argue past each other. On appeal, the City takes for granted that the dispute revolves around whether there was probable cause to arrest Kennedy after he hit Cory's hand in his attempt to regain control of his driver's license. Kennedy did not file an appellate brief. However, Kennedy's memorandum below argued that his arrest was illegal because there was not probable cause to arrest him at the moment Cory approached his vehicle with gun drawn. This discrepancy would be easily resolved but for the fact that the district court made no

4

factual findings and provided no reason for granting Kennedy's motion. Presumably, the district court granted Kennedy's motion for the reason he expounded in his motion— namely, because the City failed to convince the district court that Cory had probable cause to arrest Kennedy when he initiated contact. This presumption will serve as the foundation for the analysis here. Therefore, the question this court must answer is whether Cory's initial stop of Kennedy constituted an unlawful arrest.

Courts distinguish between four types of citizen-police interactions: voluntary encounters, public safety stops (also known as welfare checks), investigatory detentions (*Terry* stops), and arrests. *State v. Hill*, 281 Kan. 136, 141-42, 130 P.3d 1 (2006). Voluntary encounters are just that, voluntary, and are not considered a seizure under the Fourth Amendment to the United States Constitution. The target citizen is free to engage or disregard the officer. When an officer initiates an investigatory detention, however, the target citizen is not free to disregard the officer or terminate the encounter at his or her pleasure. Thus, the encounter is a form of seizure and triggers the protective requirements of the Fourth Amendment; because of this, a minimum level of suspicion is required before an officer can initiate the interaction. However, because investigatory detentions are limited in scope and duration, officers need only have reasonable suspicion that a person is, has, or is about to commit a crime prior to making contact. See 281 Kan. at 141. A traffic stop is one type of investigatory detention. 281 Kan. at 143. Clearly at a minimum, this case involves an investigatory detention.

An arrest occurs when an individual is "physically restrained or when he or she submits to the officer's custody for the purpose of answering for the commission of a crime." 281 Kan. at 143; see K.S.A. 2015 Supp. 22-2202(d). Because arrest involves a significant intrusion on an individual's liberty, a higher level of suspicion, probable cause, that a person has committed or is committing a crime, is necessary before an officer may initiate an arrest. 281 Kan. at 145.

5

Because both investigatory detentions and arrests involve a restraint on an individual's freedom, it can be difficult at times to distinguish between the two encounters. Our Supreme Court has held that "the test for whether a seizure and an arrest has occurred is based on what a reasonable person would believe under the totality of the circumstances surrounding the incident." 281 Kan. at 145. Aside from *Hill*, there are few Kansas cases that attempt to distinguish between an investigatory detention and an arrest under circumstances similar to those at issue here. Accordingly, solely for purposes of this decision, we will assume—without deciding—that Kennedy is correct and that Cory arrested Kennedy when Corey stepped from his vehicle with his gun drawn and ordered Kennedy to remain in the vehicle and put his hands on the dashboard.

Kansas statutes dictate the circumstances under which an officer is justified in making an arrest. As it applies to the facts here, an officer is justified in making an arrest when the officer has probable cause to believe the person is committing or has committed a misdemeanor and either evidence of the crime will be irretrievably lost unless the person is immediately arrested or the person may cause injury to self or others or damage to property unless immediately arrested. K.S.A. 22-2401(c)(2)(A), (B). Moreover, an officer is justified in making an arrest when any crime, except a traffic infraction, is committed by the person in the officer's view. K.S.A. 22-2401(d).

Reckless driving, K.S.A. 8-1566, is not a traffic infraction. K.S.A. 2015 Supp. 21-5102(b) (traffic infractions are only those offenses listed in subsection (c) of K.S.A. 8-2118). It is not a felony. K.S.A. 2015 Supp. 21-5102(a) (felonies are crimes punishable by death or imprisonment in a state prison or a crime defined as a felony by law). Therefore, reckless driving is a misdemeanor. K.S.A. 2015 Supp. 21-5102(d) (all other crimes are misdemeanors).

Corey testified that Kennedy was driving the vehicle recklessly. He first observed the SUV Kennedy was driving "swerving heavily," crossing and straddling the dotted

6

lane lines for some time, and exceeding the posted speed limit. While still speeding, Kennedy proceeded to abruptly turn in front of a vehicle that was in the process of stopping in a right turn lane, cutting the vehicle off and causing the other driver to stop suddenly to avoid a collision. This constituted a separate offense of making an unsafe lane change. At this point the officer classified Kennedy's behavior as reckless driving. Kennedy then continued by failing to yield the right of way as his vehicle returned to the lanes of traffic. Subsequently, Kennedy passed a vehicle by using the center "suicide lane" to pass. He then continued to straddle the lanes of traffic. Even though Corey testified that he thought something else might be going on, at the time of the stop he knew he had observed several traffic violations. Kennedy did not dispute this driving behavior. In fact, he was charged with reckless driving and pleaded no contest to reckless driving. Accordingly, Corey was justified in arresting Kennedy because he observed a misdemeanor being committed in his presence.

Given that Kennedy was legally under arrest, the district court erred in granting his motion to suppress and we reverse and remand for further proceedings.

Reversed and remanded.