NOT DESIGNATED FOR PUBLICATION

No. 118,195

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL DEAN HAYNES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed November 16, 2018. Affirmed.

*Larry D. Tittel*, of Ness City, for appellant.

*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

PER CURIAM: We affirm Michael Dean Haynes' convictions for possession of drugs and paraphernalia and transporting an open container of alcohol because the district court did not err when it admitted his statements to the arresting officer and the contraband in his pickup. Haynes' frank conversation with the officer occurred during an investigatory detention that does not require a *Miranda* warning. The physical exhibits from the truck were in plain view and lawfully seized by the officer while he was checking the pickup for more open cans of beer.

1

*Haynes' lights were not on.*

Around midnight one morning of August 2015, a Hays Police officer stopped Haynes because his truck's taillights were not turned on. Haynes admitted that he forgot to turn them on and told the officer that he had just finished a double shift at work. The officer noted that Haynes mumbled and slurred his words. He asked Haynes if he had consumed any alcoholic beverages. Haynes said that he had one beer. When he heard this, and considered Haynes' slurred speech, and the time of night, the officer asked Haynes to perform some field sobriety tests. Haynes said he would and got out of his pickup.

When Haynes stepped out, the officer spotted a beer can sitting directly behind the driver's seat. He grabbed the can. It felt cold, was about half full, and still had condensation on it. The officer asked Haynes if the one beer he said he drank was the beer he just found behind the seat, and Haynes said it was. At this point, the officer stated he had intended to place Haynes in his patrol car, write him a citation for transporting an open container, and then release him. In that department this is called a "cite and release" procedure. As events unfolded, the officer's intent soon changed.

First, the officer asked Haynes if he had any weapons. Haynes produced a sheathed pocket knife, which the officer did not take. The officer then set the open beer can in the back of the pickup and directed Haynes to the rear of the truck to do some field sobriety tests. The officer noted five out of eight clues of impairment on the walk-and-turn test and one out of four clues of impairment on the one-legged stand.

At this point, the officer asked Haynes to take a preliminary breath test. Haynes agreed, telling the officer to "get the balloon out" so they could get the test over with. The officer advised Haynes that they needed to wait 15 minutes before they could proceed

with the PBT. While they waited, the ensuing frank discussion between the officer and Haynes led to the filing of this case.

The officer said later that he doubted whether the PBT would show Haynes was under the influence of alcohol, in spite of the clues from the coordination tests and the other observed indicators. Simply put, Haynes did not have the "pungent" smell of alcohol emanating from him that the officer expected of someone under the influence of alcohol.

Widening his investigation, the officer wondered what else could affect Haynes as does alcohol. "So I started investigating further as to okay, is this going to be a DUI alcohol, or DUI drugs, or is this just in fact we've been awake for 18 hours and old age is kicking in so to speak." Over the next six to seven minutes, the officer questioned Haynes about what else could have been influencing his behavior and speech. He explored his possible drug use.

He asked Haynes if he used illegal drugs. Haynes replied, "Every chance I get." When the officer asked him when he last used marijuana, Haynes replied he had not smoked marijuana regularly since 1991. But he did still use it sometimes, but had not on that day. The officer then asked Haynes when his last use of methamphetamine was, and Haynes replied, "Last time I had some." The officer first thought this reply was in jest. Then Haynes volunteered that his last use was about one week earlier. Haynes explained that he did not snort it because he had had a broken nose.

Based on Haynes' statements, the officer radioed a request for assistance from a drug-use recognition expert. But no expert was available to come to the scene.

Once he learned that no expert was available, the officer again asked about Haynes' last use of methamphetamine. The officer asked Haynes to be honest with him

3

because—based on the way Haynes' eyes appeared—he believed Haynes' drug use was more recent than he stated. Haynes replied his last use of methamphetamine was five or six days earlier. The officer then asked if Haynes used the drug to stay awake. Haynes replied that he did and if some were around, then that would be great.

Haynes then asked the officer if he had any methamphetamine. The officer told him that he did not and then asked Haynes if he used a pipe to smoke methamphetamine. Haynes said he did. The officer asked if he had the pipe in his truck. Haynes said no, the pipe was at his house. Haynes said that if he had some methamphetamine, he would have it with him, but it was at his house. When the officer asked what kind of pipe Haynes had and if it was a glass or clear pipe, Haynes replied, "C'mon, now, you know the drill."

The officer administered the PBT. While waiting for the results, he asked Haynes how much methamphetamine he kept at his house. Haynes replied he kept a gram or two, but he suggested that if he had a gram, he would smoke it. The officer then asked him how much a gram cost. Haynes answered that a gram of methamphetamine used to cost $40 and cocaine was $120, but the costs were now the opposite.

The results of the PBT were 0.012, well within the legal blood-alcohol limit. The officer then decided not to arrest Haynes for DUI. He did, however, tell Haynes that they still had to deal with the transporting an open container of alcohol. He told Haynes that he was going to be placed under arrest and he would have to sit in the patrol car while the officer "addressed that situation." Haynes asked if he could have a cigarette. The officer allowed Haynes to smoke while another officer waited with Haynes outside the car.

When the officer went back to the pickup he wanted to check for any more open containers as additional evidence on the transporting an open container offense. Mindful that this was a "cite and release" procedure, the officer wanted to make sure there were no

4

other open containers in the pickup before releasing Haynes to drive again. He discovered more than beer.

When the officer opened the door to the pickup and shone his flashlight into the cab, he saw a brown pouch in the cut-out cubby of the console below the radio. The brown pouch was angled outward and sticking out of the pouch was what appeared to be a round glass pipe with a white residue inside it. He pulled the pouch from the cubby and then removed a glass pipe out of the pouch. Also in the cubby was a small plastic bag with a small amount of crystal substance in it.

Based on his training and experience, the officer believed the pipe was used for smoking methamphetamine and that the crystal substance was methamphetamine. In the seat of the pickup, he found a cooler filled with ice and more cans of beer. None were open. The officer collected the open beer can, the pipe, and the suspected methamphetamine. The field test of the crystal substance was positive for methamphetamine.

At that point, the police placed Haynes in handcuffs and transported him to the law enforcement center. At no time before the arrest did the officer give Haynes a *Miranda* rights advisory.

The State charged Haynes with felony possession of methamphetamine, misdemeanor possession of drug paraphernalia, and transporting an open container. Haynes moved to suppress his statements and the physical evidence collected by the officer. The district court denied Haynes' motion.

Haynes waived his right to a jury trial and agreed to a bench trial on stipulated facts, with the provision that he would object to the introduction of his statements and the

physical evidence. He objected, but the court found Haynes guilty on all three charges over his objections.

At sentencing the court held Haynes' criminal history score was I and sentenced him to a suspended prison term of 11 months for possession of methamphetamine and granted probation for 18 months, to include drug treatment. For possession of drug paraphernalia, the court sentenced him to six months in county jail with probation. For his conviction for transporting an open container, the court sentenced Haynes to 30 days in the county jail with probation. All the sentences are to be served concurrently.

To us, Haynes contends that the district court erred in denying his motion to suppress his statements to the officer as well as the drug-related evidence discovered in the search of his pickup. The State responds by arguing that the district court's decision should be affirmed because the statements and the evidence were collected legally. Because the material facts to the trial court's decision on this motion to suppress evidence are undisputed, we treat this as a question of law over which we have unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

*This was an investigatory detention.*

To help in our analysis, we review two types of citizen-police encounters: investigatory detentions and arrests. The differences between the two are legally significant. An "investigatory detention" is the temporary restraint of a person by a law enforcement officer to find out what is going on. Of course these detentions can lead to arrests. See *State v. Hill*, 281 Kan. 136, 142, 130 P.3d 1 (2006); see K.S.A. 2017 Supp. 22-2202(j).

In contrast, the courts consider a person to be under arrest by a law enforcement officer when the person is taken into the officer's custody to answer for the commission

of a crime. See K.S.A. 2017 Supp. 22-2202(d). The test for determining whether a person has been placed under arrest is not based on the officer's subjective belief but is based on what a reasonable person would believe under all the circumstances. *Hill*, 281 Kan. at 145.

Here, based on Haynes' demeanor, slurred speech, the time of night, and Haynes' admission that he had been drinking alcohol while driving, the officer reasonably suspected that Haynes was driving under the influence of alcohol. In other words, he suspected Haynes was committing a crime. After ruling out alcohol as the source of Haynes' affect and behavior, the officer sought to determine whether Haynes was under the influence of another substance before citing and releasing him for the open container. Haynes' detention was clearly of an investigatory nature. See *Hill*, 281 Kan. at 142.

Some other facts lead us to conclude this was an investigatory detention. Haynes does not claim he was physically restrained or deprived of his freedom of action in any significant way. The record reveals that Haynes answered the officer's questions with some elaboration and a measure of levity so that even the officer thought he was joking at one point. Haynes kept his pocket knife throughout the coordination tests and after, until he was arrested for the open container violation.

Even then, he was not handcuffed or placed in the patrol car, but he was allowed to smoke a cigarette while the officer returned to the pickup to look for more open containers. We are unpersuaded by Haynes' argument on appeal that he was under arrest when he made his statements to the officer. Because this was not an arrest, we hold the statements he made to the officer were admissible. Here is why.

The United States Supreme Court, in *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the

7

defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) Officers must inform an individual accused of a crime that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444. Our Kansas Supreme Court has followed these instructions.

Citing *Miranda,* the court in *State v. Jacques*, 270 Kan. 173, 186, 14 P.3d 409 (2000), held that a custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." 270 Kan. at 186. And an investigatory interrogation is the questioning of a person by a law enforcement officer in a routine manner before the investigation has reached the accusatory stage and where the person is not in legal custody or deprived of his or her freedom in any significant way. An objective standard is used to judge whether an interrogation is custodial or investigatory. *Miranda* warnings are required only for custodial interrogations, but not for investigatory, noncustodial interrogations. 270 Kan. at 186.

Since Haynes was not under arrest when he volunteered the several statements he made to the officer, the court did not err when it denied his motion to suppress them at trial. We move on to examine the admissibility of the items seized from Haynes' pickup.

*The contraband was lawfully seized.*

Haynes argues that the search of his pickup was illegal because the officer had no warrant and no exceptions to the search warrant requirement apply. In his view, the open container of beer was seized by the officer when he was arrested for the open container violation, before any *Miranda* warnings, and before the second search of his pickup. Haynes suggests that the open beer can seized first was enough to prove the offense of

8

transporting an open container and the second search was unnecessary and a violation of his constitutional rights. The State argues that the initial discovery of the open container put the officer in the lawful position to view and seize other obvious contraband.

Some fundamental points of law give us direction in our analysis. Both the United States Constitution and the Kansas Constitution both protect citizens against unreasonable searches and seizures. Normally, search warrants are required. But the courts have recognized exceptions. Unless an exception to the warrant requirement exists, a warrantless search of a citizen is per se unreasonable under the Fourth Amendment to the United States Constitution. *State v. Stevenson*, 299 Kan. 53, 58, 321 P.3d 754 (2014). An exception applies here.

The exceptions to the search warrant requirement include:
- consent;
- search incident to a lawful arrest;
- stop and frisk;
- probable cause plus exigent circumstances;
- the emergency doctrine;
- inventory searches;
- plain view or feel; and
- administrative searches of closely regulated businesses. *State v. Sanchez-Laredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012).

The State carries the burden to prove that a search and seizure was lawful. See 305 Kan. at 605. Here, we look at search incident to a lawful arrest.

In Kansas, a vehicle may be searched incident to a recent occupant's arrest only when (1) the arrestee is unsecured and within reaching distance of the passenger

compartment at the time of the search, or (2) it is reasonable to believe evidence relevant to the crime of arrest might be in the vehicle. See *Cleverly*, 305 Kan. at 614-15.

Here, the district court relied on the officer's testimony that he was looking for open containers of alcohol during the search. The court held this was evidence relevant to the crime for which Haynes was arrested. There was a direct link between the nature of the crime of arrest—transporting an open container—and the officer's search for any more open containers of alcohol. We agree.

The facts bear this out. The officer saw the cooler on the pickup seat and knew that Haynes' open can of beer was cold, with condensation on the outside. More important here is the fact that since this police department's standard procedure for an open container offense was to "cite and release," the officer needed to ensure there were no additional open containers before allowing Haynes to drive again. Thus, the district court correctly held that Haynes' arrest for transporting an open container gave the officer reason to believe the vehicle might contain additional evidence related to the crime of arrest.

Haynes tries to impose an artificial limit on what an officer can do. After all, under the holding in *Cleverly*, an officer can legally search a vehicle if it is reasonable to believe that evidence relevant to the crime of arrest might be in it. There was good reason here. Since we have established that the officer here had good reason to return to Haynes' pickup and look in it, the results that follow are reasonable as well.

The officer's recovery of the glass pipe and baggie that contained methamphetamine is supported by the plain view exception to the search warrant requirement. The plain view exception applies when (1) an officer was in a lawful position to view the recovered object; (2) the incriminating character of the item

10

recovered was immediately apparent; and (3) the officer had a lawful right to access the recovered item. See *State v. Fisher*, 283 Kan. 272, 292-99, 154 P.3d 455 (2007).

When the officer began to look for open containers, he was in a lawful position to view the pouch and glass pipe. Removing those items from the dashboard cubby revealed the baggie containing the crystal substance. Based on his training and experience, the incriminating nature of the items recovered was immediately apparent.

The factual findings of the district court support its legal conclusion that the seizure of the contraband was constitutional under the plain view exception to the search warrant requirement.

Affirmed.

11