No. 105,884

STATE OF KANSAS, *Appellant*, v. CHARLES ELMER BRUCE, JR., *Appellee*.

(287 P.3d 919)

Opinion filed November 2, 2012.

*Lee J. Davidson*, assistant attorney general, argued the cause, and *Derek Schmidt*, attorney general, was with him on the briefs for appellant.

*Jeb C. Griebat*, of Griebat Law Office, of Chanute, argued the cause, and *Carl Folsom, III*, of Bell Folsom, P.A., of Lawrence, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: In this interlocutory appeal, the State challenges the district judge's suppression of evidence derived from a wiretap. We transferred the case from the Court of Appeals on our own motion and now affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began December 10, 2009, when then Attorney General Steve Six signed the following written delegation of authority to then Assistant Attorney General Barry Disney:

"I, Steve Six, the duly elected Attorney General of the State of Kansas, do hereby delegate the authority to exercise the power of the Attorney General to make application for ex parte orders authorizing the interception of wire, oral or electronic communication pursuant to K.S.A. 22-2515, et seq. to Barry Disney, Assistant Attorney General.

"This delegation of authority to exercise the power of the Attorney General to make application for ex parte orders authorizing the interception of wire, oral or

electronic communication is made under the authority of K.S.A. 75-710 and shall remain in effect until revoked by me in writing."

Less than 3 weeks later, Disney appeared before District Court Judge Cheryl Rios Kingfisher in Shawnee County "for Attorney General Steve Six . . . pursuant to K.S.A. 75-710" and applied "for an order authorizing interception of wire communications and electronic communications pursuant to K.S.A. 22-2516." The wiretap was to assist in a drug investigation, and the application was based on information provided by a Kansas Bureau of Investigation special agent. Judge Kingfisher issued an order authorizing the requested interception.

The investigation led to this prosecution of defendant Charles Elmer Bruce, Jr., in Neosho County on one count of conspiracy to manufacture methamphetamine and one count of possession of pseudoephedrine. Bruce sought suppression of all evidence derived from the wiretap, arguing that the order was unlawful.

According to Bruce's motion to suppress, Disney was not "within the class of persons designated by the legislature to apply for an eavesdropping or intercepting order," because "K.S.A. 22-2515 does not allow an assistant attorney general to make such an application." Bruce cited *State v. Farha*, 218 Kan. 394, 544 P.2d 341 (1975), *cert. denied* 426 U.S. 949 (1976), and *In re Olander*, 213 Kan. 282, 515 P.2d 1211 (1973); and he argued that application of K.S.A. 2011 Supp. 75-710 to broaden an assistant attorney general's authority under K.S.A. 2011 Supp. 22-2515 was impermissible because of a conflict between the two statutes and legislative history pointing to a contrary intention. Bruce also asserted that the Kansas statutory scheme for authorizing wiretaps could not be more permissive than the federal scheme, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2515 (2006) *et seq.* Finally, he argued that admissibility of the wiretap evidence could not be saved by the good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), because suppression was required by wiretap-specific statutes.

At the time, the State argued in response that K.S.A. 2011 Supp. 75-710 permitted the attorney general to specially designate an

assistant attorney general to apply for a wiretap order. The State also argued that the cases relied upon by Bruce dealt specifically with the validity of a prior version of the Kansas statute, see K.S.A. 1972 Supp. 22-2513 (repealed 1974), and did not control the interpretation of the current interaction between K.S.A. 2011 Supp. 75-710 and K.S.A. 2011 Supp. 22-2515. The State also relied on decisions from the federal courts and other state courts that interpreted 18 U.S.C. § 2516(2) (2006) to permit delegation under certain circumstances. In its view, the Kansas statutory scheme was not too permissive to pass muster when compared with its federal counterpart. Finally, the State sought to rely on the *Leon* good-faith exception.

District Court Judge Timothy E. Brazil held two hearings on Bruce's suppression motion. At one of the hearings, Six and Disney testified about the procedure they followed on the delegation and the wiretap application. After briefing and argument, Judge Brazil suppressed the wiretap evidence, holding that "K.S.A. 75-710 does not amend or expand the powers granted to the attorney general pursuant to K.S.A. 22-2515(a)" and that "K.S.A. 75-710[,] as applied with K.S.A. 22-2515[,] is more permissive than 18 U.S.C. 2516(2)[;] therefore, the application and order authorizing interception are fatally defective and the evidence thereby was unlawfully intercepted."

This interlocutory appeal and transfer from the Court of Appeals followed.

## ANALYSIS

The standard of review for the interpretation of Kansas statutes is well known. See *State v. Roberts*, 293 Kan. 29, 33, 259 P.3d 691 (2011) (unlimited review); *State v. Arnett*, 290 Kan. 41, Syl. ¶ 1, 223 P.3d 780 (2010) (intent of legislature governs; no statutory construction necessary if language of statute plain and unambiguous; if language ambiguous, court may construe statute by consulting legislative history, canons of construction, other background considerations that shed light on statute's purpose). Our approach to the interpretation of federal statutes is the same, in the absence of an "otherwise binding court ruling." *Purvis v. Williams*, 276 Kan.

182, 187, 73 P.3d 740 (2003); see *In re M.F.*, 290 Kan. 142, 150-51, 225 P.3d 1177 (2010). Because of the risk wiretaps pose to personal privacy, authorizing statutes must be strictly construed. *Olander*, 213 Kan. at 287.

In addition, when reviewing a ruling on a motion to suppress evidence,

"this court generally reviews the factual findings underlying the district court's suppression decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by a de novo standard. The court does not reweigh the evidence. [Citation omitted.] When the parties do not dispute the material facts, however, the suppression question is solely one of law. [Citation omitted.]" *State v. Coleman*, 292 Kan. 813, 817, 257 P.3d 320 (2011).

See *State v. Johnson*, 293 Kan. 1, 4, 259 P.3d 719 (2011).

At oral argument before this court, counsel for the State suggested that analysis of this case should ask and answer three questions: First, has defendant Bruce established a violation of federal wiretap law? Second, did any violation run afoul of a provision intended to play a central role in the statutory scheme? And, third, if the provision was intended to play a central role, was its purpose achieved in spite of the violation and thus the violation harmless?

We agree that asking and answering these questions is exactly what is called for here.

The State conceded at oral argument that the answer to each of the first two questions was "yes." In other words, there has been a violation of federal wiretap law, and the violation implicated a provision intended to play a central role in the statutory scheme. Given these concessions, we do not engage in an extensive discussion on these two points.

On the third question, the State asserts that the delegation from Six to Disney, despite its violation of a central provision, achieved the protective purposes of the federal and state statutes, eliminating the need for suppression of the wiretap evidence. We therefore discuss at somewhat greater length the parties' contrary positions and our resolution.

We begin with a brief review of the statutes at the heart of this case, as well as our decisions in *Olander* and *Farha*.

*The Statutes and Our Cases*

Applications for wiretaps in the Kansas court system are subject to both 18 U.S.C § 2515 *et seq.* and Kansas wiretap statutes that largely mirror the federal provisions.

Under the federal statute,

"[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . in or before any court . . . or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515 (2006).

Kansas statutes contain the same suppression requirement when wiretap evidence has been obtained in violation of explicit safeguards. See K.S.A. 22-2517.

Both the federal and state statutes also provide for motions to suppress wiretap evidence in certain circumstances. The federal statute states:

"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) The communication was unlawfully intercepted;
(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
(iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a) (2006).

Kansas' version of the federal statute's subsections is identical in all significant respects. See K.S.A. 2011 Supp. 22-2516(9)(a).

Most significant here, both the federal and Kansas statutes safeguard the privacy of potential subjects of wiretaps by listing the specific state prosecutors who may seek a court order for interception. Under 18 U.S.C. § 2516(2),

"[t]he principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State

statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of [certain listed offenses], designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses."

This provision singling out "the principal prosecuting attorney" of any state or political subdivision is considerably narrower than an alternate federal statute governing applications for wiretaps by United States prosecutors. See 18 U.S.C. § 2516(1) (power to seek wiretap order extended to the United States "Attorney General, Deputy Attorney General, Associate Attorney General, any Assistant Attorney General, any acting Assistant Attorney General, any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in Criminal Division, National Security Division). The federal wiretap statute expressly references the delegation of power by the United States Attorney General. 18 U.S.C. § 2516(1).

The Kansas counterpart to 18 U.S.C. § 2516(2) on "the principal prosecuting attorney" of the State is K.S.A. 2011 Supp. 22-2515(a)(1)-(20). It reads in pertinent part:

"The attorney general, district attorney or county attorney may make an application to any judge of competent jurisdiction for an order authorizing the interception of a wire, oral or electronic communication by an investigative or law enforcement officer and agency having responsibility for the investigation of the offense regarding which the application is made when such interception may provide evidence of the commission of [certain listed offenses (1)-(19)]; or (20) any conspiracy to commit any of the foregoing offenses."

*Olander* and *Farha*, the two previous cases from this court upon which the parties focus, did examine an earlier version of K.S.A. 22-2515(a)(1)-(20), as the State has pointed out. See *Olander*, 213 Kan. at 283; *Farha*, 218 Kan. at 395. The statute then permitted "the attorney general, an assistant attorney general, or a county attorney" to make an application for a wiretap order. See L. 1970, ch. 129, sec. 22-2513(1) (repealed 1974). Although the language of K.S.A. 2011 Supp. 22-2515(a)(1)-(20) now lists "[t]he attorney general, district attorney or county attorney," the principles enunciated in *Olander* and *Farha* remain evergreen and applicable here.

In *Olander*, an assistant county attorney had applied for the order in issue. The parties did not dispute that the assistant had filed the application in the county attorney's name and with his express authority, but this court nevertheless ruled that the statute's omission of "assistant county attorney" from the list of prosecutors who could apply for such an order conclusively required suppression. *Olander*, 213 Kan. at 283-85. We rejected the State's argument that the county attorney could delegate his statutory authority to an assistant county attorney, saying that the statute was

"intended to limit strictly the class of persons who may apply for an order permitting electronic surveillance, and . . . an assistant county attorney does not come within the class designated by the Kansas Legislature.

"No area of the law is more sensitive than that of electronic surveillance, since such activity intrudes into the very heart of personal privacy. There it is that legislative assemblies, including the Congress, have carefully restricted the right to apply for the use of electronic bugging devices to a very select coterie of public officers." *Olander*, 213 Kan. at 285.

Although *Olander* focused primarily on the exclusive wording of the Kansas statute, it also quoted the language in the tandem federal statute, and it observed that the Supreme Court of Minnesota had noted the absence of assistant county attorneys in the federal statute on state wiretaps. See *Olander*, 213 Kan. at 287 (quoting *State v. Frink*, 296 Minn. 57, 75, 206 N.W.2d 664 [1973]). Our *Olander* opinion did not address today's further question of whether the statutory suppression remedy could be avoided on any basis.

In *Farha*, we examined wiretaps authorized by a district court upon application of an assistant attorney general. We held that K.S.A. 22-2513(1)'s listing of an assistant attorney general among the prosecutors able to apply for a wiretap order was more permissive than 18 U.S.C. § 2516(2)'s listing and thus the wiretaps were obtained illegally. *Farha*, 218 Kan. at 401-04. Again, we rejected the State's argument that it should be sufficient for the attorney general to have authorized and approved the application before it was submitted to the court.

"The difficulty with this contention is that under 18 U.S.C. § 2516(2) only the attorney general (the principal prosecuting attorney of the state) is authorized to

make the application. The statute makes no distinction between 'authorizing' and 'applying.' " Keeping in mind the expressed objectives of Title III—to centralize in a publicly responsible official subject to the political process the formation of policy on electronic surveillance—we think no such distinction should be made. In Kansas the attorney general can appoint as many assistant attorneys general as he may deem necessary (K.S.A. 75-3111). We cannot perceive Congress intended that at any given time the number of persons in Kansas who may obtain a wiretap order is limited only by the number of assistant attorneys general and county attorneys in existence at the particular time. . . . Strictly circumscribing this authority to that stated in the federal act—in Kansas the attorney general—will clearly eliminate any possible after-the-fact question as to identifiable individual responsibility for the application. Inasmuch as K.S.A. 1971 Supp. 22-2513(1) was more permissive than 18 U.S.C. § 2516(2) in that it purported to authorize an assistant attorney general to make application for a wiretap order, our state statute must be held invalid as in conflict with the federal act." *Farha*, 218 Kan. at 403-04.

In *Farha*, we addressed the goals of the federal wiretap statutory scheme:

" 'Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. To assure the privacy of oral and wire communications, Title III prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause.' " 218 Kan. at 399 (quoting 1968 U.S. Code Cong. and Admin. News, S. Rep. 1097, 90th Congress, 2d Session, pp. 2112, 2153).

See also *United States v. Giordano*, 416 U.S. 505, 514, 515, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974) (The purpose of Title III "effectively to prohibit" all interceptions except those authorized by Act; "Congress . . . evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications."). By enacting Title III, Congress "preempted the field of electronic surveillance regulation under its power to regulate interstate communications," allowing concurrent state regulation only if "subject, at the minimum, to the requirements of the federal regulation." *Farha*, 218 Kan. at 400; see 18 U.S.C. § 2516(2). State statutes that are more permissive than fed-

eral law are preempted. 218 Kan. at 400 (quoting *Commonwealth v. Vitello*, 367 Mass. 224, 250, 327 N.E.2d 819 [1975]); see 18 U.S.C. § 2515.

One other Kansas statute has the potential to complicate the answers to the three questions that guide the analysis and outcome in this case. K.S.A. 2011 Supp. 75-710 on the powers and duties of assistants and employees of the Kansas Attorney General grants him or her broad authority to delegate performance of responsibilities and, since 2005, includes the following language:

"Assistants appointed by the attorney general shall perform the duties and exercise the powers as prescribed by law and shall perform other duties as prescribed by the attorney general. Assistants shall act for and exercise the power of the attorney general to the extent the attorney general delegates them the authority to do so."

*Question One: Existence of Violation*

The central question in this appeal at the time it was transferred to this court was the first: Has defendant Bruce established a violation of federal wiretap law? Answering this question requires a predicate evaluation of whether Judge Brazil correctly determined that K.S.A. 2011 Supp. 75-710, when read in conjunction with K.S.A. 2011 Supp. 22-2515(a)(1)-(20), is more permissive than the applicable federal wiretap statute, 18 U.S.C. § 2516(2).

According to the plain language of K.S.A. 2011 Supp. 75-710, the only limitations on delegation by a Kansas Attorney General to an assistant attorney general are the extent of the attorney general's own authority and the outer parameters of the delegation itself. Because K.S.A. 2011 Supp. 22-2515(a)(1)-(20) allows the attorney general to "make an application to any judge of competent jurisdiction for an order authorizing the interception of a wire, oral or electronic communication," the State's argument was that the attorney general may lawfully authorize an assistant to do the same under K.S.A. 2011 Supp. 75-710.

But this reading of K.S.A. 2011 Supp. 22-2515(a)(1)-(20) and K.S.A. 2011 Supp. 75-710 is preempted by the plain language of 18 U.S.C. § 2516(2), which allows no such delegation of wiretap order applications by "the principal prosecuting attorney of any State." As the State has now implicitly recognized through its oral

argument concessions, the fact that *Olander* and *Farha* were focused on an earlier version of Kansas' wiretap statutes does nothing to undercut these cases' recognition of the preemptive effect of federal wiretap restrictions on the identities or positions of the state prosecutors authorized to seek an order. See *Farha*, 218 Kan. at 400-01; *Olander*, 213 Kan. at 283-86. Although we appreciate that not every court confronting this issue would agree with our resolution of it, see Annot., 169 A.L.R. Fed. 169, § 8[b], [c], pp. 193-96 (citing conflicting decisions on whether principal prosecuting attorney's power to apply for a wiretap order may be delegated), we see no reason to depart from our precedent on this point at this time. For wiretaps originating in a state court, it is only the principal prosecuting attorney who is listed by federal statute as the officer who "may apply" for the wiretap order. Congress' will has been expressed in "reasonably plain terms," and we therefore regard the language of 18 U.S.C. § 2516(2) as conclusive. See *In re M.F.*, 290 Kan. at 150-51; see also *Farha*, 218 Kan. at 404 (delegation of state authority to apply for wiretaps does not comport with Congress' intent).

Judge Brazil was correct in ruling that Disney was not authorized to submit the wiretap application. Defendant Bruce has established a violation of federal wiretap law.

*Question Two: Violation Implication of Central Provision*

Both the United States Supreme Court and this court have identified the limited authorization provisions of the wiretap statutory scheme as "central." See *Giordano*, 416 U.S. at 528 (Supreme Court "confident" provision for preapplication approval intended to play central role); *Farha*, 218 Kan. at 402-03 (preapplication authorization "[c]rucial . . . safeguard[]"; "centralization ensures that wiretap applications not be approved routinely by lower echelon officials"; "centraliz[ation] in a publicly responsible official subject to the political process the formation of policy on electronic surveillance" express objective of federal law); *Olander*, 213 Kan. at 285; *cf. United States v. Donovan*, 429 U.S. 413, 435-36, 97 S. Ct. 658, 50 L. Ed. 2d 652 (1977) (information on additional targets not central); *United States v. Chavez*, 416 U.S. 562, 564-65, 94 S.

Ct. 1849, 40 L. Ed. 2d 380 (1974) (when actual authorization of application performed by correct person, facial flaw on identification of person excused); *United States v. Foy*, 641 F.3d 455, 462-64 (10th Cir. 2011) (mere technical defect in wiretap application does not require suppression); *State v. Willis*, 7 Kan. App. 2d 413, 414, 643 P.2d 1112 (1982) (late mailing of postinterception inventory does not require suppression under K.S.A. 22-2516[9][a]).

In *Farha*, we further emphasized that the "authorization requirements are not mere technicalities; they are at the heart of the congressional scheme. . . . The procedures outlined in 18 U.S.C. § 2516 must be strictly complied with . . . ." 218 Kan. at 403. We rejected a distinction between "authorization" and "application" that would allow for delegation by the attorney general to an assistant attorney general. 218 Kan. at 403-04.

Again, by its oral argument concessions, the State has implicitly recognized the continuing force of our precedent on this point. We do not choose to depart from it. The violation in this case ran afoul of a provision intended to play a central role in the statutory scheme.

*Question Three: Preservation of Purpose and Harmless Error*

Our third question asks whether the Kansas delegation procedure used in this case sufficiently safeguarded the purposes behind the federal wiretap statutory scheme. See *Farha*, 218 Kan. at 400-03. If so, the parties continue to differ on whether exclusion of the evidence derived from the wiretap is absolutely necessary under the federal and state statutes or whether the violation is subject to some sort of harmlessness analysis.

The State no longer argues that the good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), applies to save admission of the wiretap evidence here. It recognizes that *Leon* sets forth a court-created exception to what was already a court-created remedy designed to deter law enforcement violation of constitutional rights. See *Giordano*, 416 U.S. at 524, 527 (citing 18 U.S.C. § 2518[10][a][i]) (suppression of evidence from wiretaps "does not turn on the judicially fashioned exclusionary rule aimed at deter-

ring violations of Fourth Amendment rights, but upon the provisions of Title III"; "Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device"); see also *United States v. Rice*, 478 F.3d 704, 712-14 (6th Cir. 2007) (rejecting three other federal circuit Courts of Appeals' application of *Leon*; Title III contains no exceptions to exclusion; legislative history expresses desire to incorporate search and seizure law as it existed 16 years before *Leon* decided; Title III balanced social costs, benefits differently in wiretap context); see also 4 Fishman and McKenna, Wiretapping and Eavesdropping: Surveillance in the Internet Age, Grounds for Suppression § 34.10 (3d ed. 2010) (discussing federal circuit split, advocating Sixth Circuit Court of Appeals approach). The violation here, on the other hand, was statutory; and both the federal and state statutory schemes include their own, explicit remedies of evidence exclusion. See 18 U.S.C. §§ 2515, 2518(10)(a); K.S.A. 2011 Supp. 22-2515; K.S.A. 2011 Supp. 22-2516(9)(a); see also *State v. Dowdy*, 222 Kan. 118, 125, 563 P.2d 425 (1977) (citing *Giordano*, 416 U.S. 505) (pre-*Leon*; no merit in State's exclusionary rule argument; availability of suppression remedy for wiretap violation turns on provisions of statute). If the statutorily provided remedy of suppression is to be foregone here, it must be because this court deems the goals of the federal wiretap statute vindicated in spite of the violation and chooses to knit the State a safety net that the legislature omitted.

The State argues this is precisely what should happen. In its view, despite the violation of a central provision, adequate safeguards for Bruce's privacy existed because: (1) "the Six Administration established a procedure for handling wiretap applications"; (2) "Six specifically delegated his authority to Disney in writing for the purpose of making application for wiretap orders with the understanding that any such applications would first be approved by Six"; (3) "an assistant attorney general is not given permanent power equal to that of the attorney general to apply for a wiretap

order"; (4) "K.S.A. 75-710 only allows special designation by the attorney general to assistant attorneys general"; (5) "an assistant attorney general only has authority if specifically granted by the attorney general"; and (6) "the procedure . . . maintained Six, a 'publicly responsible official subject to the political process[,]' as the gatekeeper for this wiretap application."

Bruce counters that the Six-Disney delegation process failed "to meet the objectives of 18 U.S.C. § 2516(2), which are . . . policy uniformity and political centralization and accountability," because, at a minimum, any delegation statute must "contain some type of special designation language or some language that the assistant attorney general must bring the wiretap application to the attorney general for review prior to filing the wiretap application." See *United States v. Smith*, 726 F.2d 852, 856-59 (1st Cir. 1984); *Vitello*, 367 Mass. at 230-33, appx. at 253-58.

Our usual practice is to apply the letter of clear statutes without grafting new, court-created rules onto them to rescue violators. " 'A statute should not be read to add something that is not found in the plain words used by the legislature . . . .' " *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012) (quoting *Farmers Ins. Co. v. Southwestern Bell Tel. Co.*, 279 Kan. 976, 978, 113 P.3d 258 [2005]). " 'When a statute is plain and unambiguous, we must give effect to the legislature's intention as expressed, rather than determine what the law should or should not be.' " *Hill v. Kansas Dept. of Labor*, 292 Kan. 17, 22, 248 P.3d 1287 (2011) (quoting *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 [2007]). We acknowledge that other courts have not shared our reticence about legislating. See *Vitello*, 367 Mass. at 230-33, appx. at 253-58 (approving statute permitting special designation with addition of court-specified measures establishing parameters); see also *Smith*, 726 F.2d at 857-58 (procedure mandated by Supreme Judicial Court in *Vitello* "calls for far more protection than a mere form letter of designation, which would amount to nothing more than a standing order frustrating the twin congressional objectives of policy uniformity and political accountability, and would constitute an abdication of responsibility"). But the sensitive area of wiretaps seems an especially poor environment for judicial policy making.

We thus maintain the position of our earlier cases: When there is a violation of a central provision of the wiretap statutes, exclusion is required by both the federal and state statutes. 18 U.S.C. § 2518(10)(a)(i); K.S.A. 2011 Supp. 22-2516(9)(a); see *Dowdy*, 222 Kan. at 125; *Farha*, 218 Kan. at 399, 403-04.

This ultimate holding eschewing harmlessness analysis implicitly rejects the State's subsidiary argument that the specific procedures and delegation document used here would have met the standard for application of a court-created exception to suppression.

*Alternative Issues*

Bruce also raises several alternative grounds for upholding the district judge's decision to suppress the evidence stemming from the wiretap in this case. Because we affirm the district court decision that the assistant attorney general could not legally apply for a wiretap authorization, we need not reach these alternative arguments.

The judgment of the district court is affirmed.