NOT DESIGNATED FOR PUBLICATION

No.113,429

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

BENJAMIN ENGELMAN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Haskell District Court; CLINT B. PETERSON, judge. Opinion filed September 18, 2015. Reversed and remanded.

*Lynn Koehn*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Paul F. Kitzke*, of Tate & Kitzke LLC., of Hugoton, for appellee.

Before MCANANY, P.J., GARDNER, J., and WALKER, S.J.

*Per Curiam*:  In this interlocutory appeal, the State argues the district court misapplied our Supreme Court's ruling in *City of Wichita v. Molitor*, 301 Kan. 251, 262, 341 P.3d 1275 (2015). We agree.

The underlying issue in this case is whether certain evidence is sufficient to show probable cause to arrest a driver for DUI.

On June 21, 2014, at approximately 1 a.m., Deputy Victor Mora saw Benjamin Engelman's vehicle stopped on the west shoulder of the highway. Engelman was

1

attempting to fix a flat tire when Deputy Mora pulled in behind the vehicle. Deputy Mora noticed Engelman had two flat tires on the left side of the vehicle, yet Engelman was aware of only one. When Deputy Mora asked Engelman what caused the flat tires, Engelman replied he had fallen asleep while driving and ended up on the side of the road. Deputy Mora located some marks on the highway, which showed Engelman "coming across the highway and then coming back to his final stop location."

Deputy Mora noticed an odor of alcohol coming from Engelman. When Deputy Mora was approximately 5 to 6 feet from Engelman, the odor was slight; when Deputy Mora stood approximately 1 foot away from Engelman, the odor was stronger. Deputy Mora also noticed Engelman "was a little unsteady" on his feet, and his eyes were bloodshot. Based on his training and experience, Deputy Mora said having bloodshot eyes could indicate the person was "under the influence of alcohol or maybe tiredness." Deputy Mora testified Engelman's speech was slurred.

Deputy Mora asked Engelman if he had consumed any alcohol. Engelman initially denied consuming any alcohol, although he later admitted he had a couple of beers. Deputy Mora explained to Engelman he was going to perform field sobriety tests to ensure Engelman could operate the vehicle safely. Deputy Mora performed the horizontal gaze nystagmus (HGN) test, the walk and turn test, and the one-leg-stand test. Deputy Mora observed Engelman swaying while he was providing the instructions. While performing the walk and turn test, Engelman stepped off of the line and asked if he could turn around. During the one-leg-stand test, Engelman began his count at 1001, when he reached 1013 he put his foot down, picked it back up, and continued the test.

Based on his observations, Deputy Mora decided to arrest Engelman. He put Engelman in the patrol car where he administered the preliminary breath test (PBT), then placed Engelman in handcuffs and arrested him.

2

Engelman pled not guilty to all charges and filed a motion to suppress evidence which a magistrate judge heard. At the hearing, Deputy Mora testified to the aforementioned facts. Additionally, the parties agreed the PBT was not properly administered and its result was subsequently suppressed. After considering Deputy Mora's testimony and report, the magistrate judge found the deputy had probable cause to arrest Engelman for DUI and denied the motion to suppress.

Engelman entered a guilty plea but then filed a notice of appeal to the district court. The district court made its findings of fact, which included Deputy Mora's observations and his administration of the field sobriety tests. Based on the Kansas Supreme Court's ruling in *Molitor*, the district court granted Engelman's motion to suppress. The State timely appeals.

*Application of Molitor*

In its interlocutory appeal, the State argues the district court misapplied the Supreme Court's ruling in *Molitor*. The State contends the district court's finding was overly broad because, in addition to suppressing evidence obtained from the HGN test, the district court suppressed all other admissible evidence. The State concedes that the HGN test should have been excluded because its reliability was not established but contends the remaining admissible evidence should have been considered for a probable cause determination.

We apply a bifurcated standard of review to a district court's decision on a motion to suppress. See *State v. Bruce*, 295 Kan. 1036, 1038-39, 287 P.3d 919 (2012). We review the district court's factual findings to determine whether they are supported by substantial competent evidence but review the ultimate legal conclusion using a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

3

In granting Engelman's motion to suppress, the district court found:

"The Kansas Supreme Court addressed the admissibility of HGN in [*Molitor*]. In short, the Court characterized HGN as 'voodoo science', and compared the reliability of the results of HGN to the reliability to the results offered by a [Ouija] Board or Magic 8 Ball.

"I am quite certain if a law enforcement officer brought a DUI case into [counsel's] office in which the officer began his investigation by consulting a Magic 8 Ball . . . irrespective of what standardized field sobriety tests followed, [counsel], or any reasonably minded prosecutor, would consider that investigation terminally flawed from its inception. The same must then be true for officers who use HGN.

"The level of condemnation of HGN by the Supreme Court makes it clear to this Court that *from now on, <u>any</u> use of HGN in a DUI investigation will render the case unprosecutable*. Any other conclusion will merely lead officers to continue using HGN to determine probable cause in their minds and then use, and maybe even manipulate, approved standardized field sobriety tests to 'articulate' probable cause to justify an arrest." (Emphasis added.)

The district court's stated understanding and application of *Molitor* is incorrect. In *Molitor*, our Supreme Court held: "The [HGN] test is based on scientific principles and before the results from an HGN test may be considered by a Kansas court for any purpose, the State must establish the reliability of such a test in a district court within this state." 301 Kan. 251, Syl. ¶ 2. In *Molitor*, the State had been allowed to rely on the scientifically unproven HGN test results to establish reasonable suspicion, which permitted the officer to request a preliminary breath test. 301 Kan. at 264.

However, our Supreme Court specifically held: "Such a fundamental error cannot be deemed harmless, *unless the other evidence was sufficient to establish the requisite reasonable suspicion without considering the HGN test results . . . .*" (Emphasis added.) *Molitor*, 301 at 264. That is precisely the inquiry that the district court should have

4

undertaken in this case. The district court should have examined all evidence but the HGN test results in order to determine whether Deputy Mora had probable cause to arrest Engelman. Thus the district court erred by granting the motion to suppress based on its erroneous interpretation of *Molitor*.

The State asks this court to remedy the error by examining the record and finding that Deputy Mora had sufficient probable cause, excluding the HGN test, to arrest Engelman for driving under the influence (DUI). But this task is better done by the district court in the first instance, as such determinations often involve weighing the evidence and assessing the credibility of witnesses – tasks we are unable to do based on a record. As the Supreme Court has recently reminded, "appellate courts do not make factual findings in the first instance; we only review district court findings." *State v. Estrada-Vital*, No. 107,324, 2015 WL 4965895, at *6 (Kan. 2015).

Reversed and remanded.