NOT DESIGNATED FOR PUBLICATION

No. 112,852

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

LOGAN ROBERTSON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed month November 6, 2015. Reversed and remanded with directions.

*Nathan L. Dickey*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*James D. Sweet*, of Allen, Sweet & Carter, LLC, of Minneapolis, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*:  In this interlocutory appeal, the State appeals the district court's granting of Logan Robertson's motion to suppress. The court found that Logan had been arrested when the police officer handcuffed her and that the officer's "misconduct" was "flagrant." The State argues the police officers could briefly detain and frisk Logan for officer safety while they determined what was going on. Because the record reveals the officer was not acting unreasonably when she briefly detained Logan for officer safety, the district court's order granting Logan's motion is reversed.

Robertson was a passenger in a car that Officer Aaron Carswell stopped in the spring of 2014. He had stopped the car at around 1:20 a.m. after dispatch informed him

1

the tags had come back to a different vehicle. As Officer Carswell exited his patrol car, the vehicle Robertson was riding in rolled backwards and struck the front of the patrol car. Officer Carswell could not tell whether the driver had backed into the patrol car by accident or intentionally. He testified it was "not typical for people to back into my patrol vehicle" during routine traffic stops. He did not recognize occupants of the car. Officer Carswell was not sure what the driver's intentions were and did not know what was going on. He did not know if the people in the car had committed a crime. He ordered the driver out of the car at gunpoint and called for backup.

Backup officers arrived on the scene. Officer Carswell had not had any contact with Robertson. Officer Rachel Larson had responded to the request for assistance. All she knew was that a traffic accident had occurred and the officer had not determined whether it was an intentional act or an accidental act.

When Officer Larson arrived, Officer Carswell and another officer had their guns pointed at the occupants of the vehicle. The driver exited the vehicle. Officer Larson could not see into the car. She could not see any potential weapons that Robertson or the driver may have had inside of the vehicle. Officer Larson removed Robertson from the car and performed a pat-down search. She did not locate any weapons on Robertson. She handcuffed Robertson until the officers "were able to determine exactly what was going on, and if there [were] any officer safety issues."

Officer Larson asked Robertson her name and date of birth. Robertson gave her name and said she was 18 years old. Officer Larson smelled a strong odor of alcoholic beverage coming from Robertson's mouth. She asked Robertson about the odor. Robertson indicated she had drunk four shots of Jagermeister at a party. Officer Larson then read Robertson her *Miranda* rights and placed her under arrest. Officer Larson asked Robertson if there was anything illegal inside the car. Robertson stated there was a marijuana smoking pipe in her purse, which was in the car. The Officers found her purse, searched it, and found a glass smoking pipe with what appeared to be marijuana residue.

2

On May 20, 2014, the State charged Robertson with possession and/or consumption of alcohol by a minor in violation of K.S.A. 2013 Supp. 41-727, possession of marijuana in violation of K.S.A. 2013 Supp. 21-5706(b)(7), and possession of drug paraphernalia in violation of K.S.A. 2013 Supp. 21-5709(b)(2).

On August 4, 2014, Robertson filed a motion to suppress. She argued that Officer Larson inappropriately, and without probable cause, had asked her if there was anything illegal in the vehicle. Robertson also alleged that Officer Larson had searched her purse without probable cause, a search warrant, or permission. Robertson argued the search, detention, and arrest were made without reasonable suspicion or probable cause. She argued the officers only obtained evidence of the marijuana pipe based on the unlawful detention and arrest.

On October 3, 2014, the district court held a hearing on Robertson's motion to suppress. Officers Carswell and Larson testified for the State. On October 24, 2014, the court announced its decision on Robertson's motion to suppress and found that Officer Carswell had stopped the car after dispatch informed him the tag did not match the vehicle. "After conducting a traffic stop, the [car] slowly rolled back into Officer Carswell's vehicle." Officer Carswell called for backup, and he and another officer approached the car with their guns drawn. The driver told officers the car had slipped out of park. When Officer Larson arrived, the officers had not determined if the incident was intentional or accidental. She removed Robertson from the front passenger seat while another officer had his weapon pointed at Robertson. Officer Larson immediately handcuffed Robertson to determine what was going on and for officer safety. She then conducted a pat-down search of Robertson. While asking Robertson questions to obtain her identifying information, Officer Larson smelled a strong odor of alcohol emanating from Robertson's breath. Robertson told Officer Larson she had drunk four shots of Jagermeister at a party and was 18-years-old. Officer Larson then arrested Robertson and

3

advised her of her *Miranda* rights. She asked Robertson if there was anything in the car and Robertson told her she had a marijuana pipe in her purse in the car.

The district court then found that "Officer Carswell conducted a traffic stop of the vehicle [Robertson] was a passenger in . . . . As a passenger in a lawfully stopped vehicle, the Court finds [Robertson] was lawfully seized in connection with a traffic stop." The court recognized Robertson's challenge that she was unlawfully detained and arrested under K.S.A. 22-2402(4) and K.S.A. 22-2405(1), which "provide that a person is considered to be under arrest when he or she is physically restrained or when he or she submits to the officer's custody." The court then found Robertson "was arrested by law enforcement when she was removed at gunpoint from the vehicle, handcuffed, and ordered to sit on the curb. She was clearly . . . physically restrained by law enforcement at that point."

The district court then considered whether the officers had probable cause to arrest Robertson. The court found:

> "The vehicle [Robertson] was a passenger in was stopped for an illegal tag. Following the stop, the vehicle slowly rolled back into Officer Carswell's vehicle. No evidence was presented that any damage was done to the patrol vehicle when the car slowly backed into it.
>
> "[Robertson] was not the driver of the vehicle. No evidence was presented at the hearing that [Robertson] was suspected of committing any crime prior to her arrest. No evidence was presented that the officers had reasonable suspicion to believe she was armed or dangerous. In fact, no evidence was presented that [Robertson] did anything other than being a passenger in the vehicle.
>
> "The Court, after considering the totality of the circumstances, finds that [Robertson] was arrested by Officer Larson without probable cause to believe that a crime had been committed, was being committed, or was going to be committed by the defendant."

4

The district court then considered attenuation. The court relied on *State v. Hill*, 281 Kan. 136, 130 P.3d 1 (2006) when determining whether Robertson's confession, given after being arrested without probable cause, should be admissible. The court found Officer Larson had given Robertson *Miranda* warnings after being removed from the car at gunpoint and then handcuffed. Robertson's "statements made . . . in response to questioning by Officer Larson occurred shortly after the illegal arrest." The court found the officers' "misconduct in . . . removing her from the vehicle at gunpoint and handcuffing her was flagrant." The court found no evidence had been presented of any intervening factors.

The district court concluded: "[T]he connection between the illegal arrest and [Robertson's] subsequent statements regarding her consumption of alcohol and a marijuana pipe in her purse, which led to the search of the purse, cannot be deemed to be so attenuated as to dissipate the taint and the illegal arrest." The court granted Robertson's motion to suppress and held that "[a]ll evidence seized and statements made following [Robertson's] illegal arrest are suppressed."

The State brings this appeal.

When reviewing a district court's decision on a motion to suppress, an appellate court applies a two-part standard. Without reweighing the evidence, we examine the district court's factual findings to determine whether they are supported by substantial evidence. *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014). When the material facts are not in dispute, the only remaining question is a legal one—whether the suppression was proper. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014). We review the district court's legal conclusion independently, without any required deference to its conclusion. *Gibson*, 299 Kan. at 216.

Kansas appellate courts apply the same two-part standard on a State's appeal of a district court's grant of a motion to suppress. *State v. Bruce*, 295 Kan. 1036, 1039, 287 P.3d 919 (2012).

Because the district court's findings of facts are not in dispute, the only remaining question is the legal question: Was suppression of the evidence proper? See *Stevenson*, 299 Kan. at 57.

The parties do not challenge the district court's finding that Robertson, as a passenger in a vehicle stopped in a lawfully conducted traffic stop, was lawfully seized. The State argues the district court erroneously determined Robertson was under arrest when she was removed from the vehicle and handcuffed. The State argues Officer Larson was justified when she handcuffed and frisked Robertson as an officer safety search during an investigatory detention. Robertson in turn argues she was effectually under arrest when Officer Larson placed handcuffs on her and "the evidentiary record is devoid of any objective facts or circumstances which would lead any of the officers involved to believe that [Robertson] posed a safety risk to the officers or that [she] had committed, was about to commit or was committing a crime."

There are four types of police-citizen encounters: "consensual encounters, which are not considered seizures; investigatory detentions, commonly known as *Terry* stops (after *Terry v. Ohio*, 392 U.S. 1, 18, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968], whose parameters are codified in K.S.A. 22-2402); public safety stops; and arrests. [Citations omitted]." *State v. Johnson*, 293 Kan. 959, 965, 270 P.3d 1135 (2012).

In the present case, we must determine if the facts suggest the encounter between Officer Larson and Robertson was an investigatory detention—a *Terry* stop under K.S.A. 22-2402—or an illegal arrest.

6

*Terry* and K.S.A. 22-2402(2) permit a minimal search of a detained person for the limited purpose of ensuring the police officer's safety, provided the officer has reasonable suspicion that such a search is required for the officer's personal safety. The officer must have prior knowledge of facts, observe conduct of the detained person, or receive responses from the detained person that, in light of the officer's experience, would give rise to reasonable suspicion that a search is necessary. *State v. Johnson*, 42 Kan. App. 2d 799, 803, 217 P.3d 42 (2009), *aff'd* 293 Kan. 959 (2012). "To perform the frisk or limited search permitted during an investigatory detention, '[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' *Terry*, 392 U.S. at 27 (citation omitted)." *Johnson*, 293 Kan. at 965. *Terry* recognized that a frisk for weapons constituted a "'severe, though brief, intrusion upon cherished personal security,' but concluded that such a search was reasonable when weighed against the 'need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for arrest.'" *Johnson*, 293 Kan. at 966 (quoting *Terry*, 392 U.A. at 24-25). When an officer detains a suspect for safety concerns, once those concerns have disappeared, an officer is not justified in beginning to perform an investigatory detention. *State v. Reiss*, 299 Kan. 291, 303, 326 P.3d 367 (2014).

For an arrest, a law enforcement officer must have a warrant for the individual's arrest, probable cause to believe there is a warrant for the individual's arrest, or probable cause to believe that the individual is committing or has committed a crime. See K.S.A. 22-2401. A person is considered to be under arrest when he or she is physically restrained or when he or she submits to the officer's custody for the purpose of answering for the commission of a crime. K.S.A. 22-2202(4); K.S.A. 22-2405(1). For purposes of this analysis, the critical part of this definition is that the physical restraint be effectuated in order to answer for the commission of a crime as opposed to any other reason, including but not limited to officer safety. See *State v. Blackston*, No. 109,684, 2014 WL 4995842, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (August 4,

7

2015); *State v. Anderson*, No. 99,779, 2009 WL 1591399, at *5 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1095 (2010).

Police officers are not required to take unnecessary risks in the line of duty. They are permitted to use precautionary measures that are reasonably necessary to safeguard their personal safety. *State v. Nugent*, 15 Kan. App. 2d 554, 564, 811 P.2d 890 (citing K.S.A. 22-2402[2]), *rev. denied* 249 Kan. 777 (1991). For example, the use of handcuffs and/or frisking a detainee for weapons does not automatically convert an investigatory detention into an arrest. *State v. Hill*, 281 Kan. at 142; *Anderson*, 2009 WL 1591399, at *5. "[T]he test for whether a seizure and an arrest has occurred is based on what a reasonable person would believe under the totality of the circumstances surrounding the incident." *Hill*, 281 Kan. at 145.

The issue presented here is whether a reasonable person would believe the officers' actions in pulling out their weapons and Officer Larson handcuffing and patting down Robertson were necessary to protect the officer's safety and the safety of the other officers.

In this case, Officer Carswell conducted a lawful traffic stop in the middle of the night of the vehicle Robertson was riding in. As soon as Officer Carswell stopped the car, it rolled back into his patrol car. Officer Carswell did not recognize the driver or Robertson and could not determine whether the driver struck the patrol car on purpose or by accident. He and another officer drew their weapons, and Officer Carswell called for backup. Officer Larson responded. She knew officers had not been able to ascertain whether the vehicle had struck the patrol car intentionally. She could not see into the car to determine if Robertson or the driver had any weapons. She removed Robertson from the car, handcuffed her, and performed a *Terry* frisk. The frisk revealed no weapons. Officer Larson wanted to gather some basic information from Robertson to determine what was going on.

8

These facts provided an adequate basis for searching Robertson and performing a brief investigatory detention. See K.S.A. 22-2402(2) (permitting a law enforcement officer to conduct an officer safety search). In hindsight, it turned out that the vehicle struck the patrol car after the gear slipped, and neither the driver nor Robertson posed any real threat to the officers. But based on the facts the officers had before them as these events played out, it was not unreasonable for them to detain and frisk Robertson for officer safety. Under these circumstances, the valid detention of Robertson became a legitimate investigatory detention for officer safety and not for purposes of answering for the commission of a crime. Because it was reasonably necessary for Officer Larson to handcuff and frisk Robertson for weapons, the physical restraint and search did not convert the investigatory detention into an arrest under these particular circumstances involving this sequence of events: the car Robertson was riding in was legally stopped at 1:20 a.m.; as a passenger, she was legally detained; when the car rolled back and hit the patrol car, the officers acted reasonably by calling for backup, removing both the driver and Robertson from the car, and handcuffing them until the officers could ascertain whether the driver had intentionally or accidentally struck the patrol car.

Because Officer Larson was not acting unreasonably when she handcuffed and frisked Robertson for officer safety, we conclude that Robertson was not arrested until after Officer Larson determined that she was 18 years old and smelled the odor of alcohol emanating from her breath. See *United States v. Shareef*, 100 F.3d 1491, 1502 (10th Cir.1996) (use of firearms, handcuffs, or other forceful techniques does not necessarily transform *Terry* stop into full custodial arrest when circumstances reasonably warrant such measures); *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) (fact that police handcuff person or draw their weapons does not, as a matter of course, transform investigatory stop into arrest), *cert. denied* 517 U.S. 1126 (1996); *State v. Walker*, 292 Kan. 1, 11-12, 251 P.3d 618 (2011) (pedestrian fitting description of burglary suspect located near scene within short period of time after burglary amounted to reasonable suspicion to support detention); *Hill*, 281 Kan. at 142 (use of handcuffs and/or frisking detainee for weapons does not automatically convert investigatory

9

detention into arrest); *Blackston*, 2014 WL 4995842, at * 4-5 (pedestrian fitting description of burglary suspect located near scene within short period of time after burglary amounted to reasonable suspicion to support detention); *Anderson*, 2009 WL 1591399, at * 5 (reasonable to detain and frisk individual when police observed defendant in an unexplained foot chase late at night in a high crime area, defendant took flight immediately after officer indicated his intent to investigate); but see *State v. Acosta*, No. 109,031, 2014 WL 2619378, at * 2-3 (Kan. App.), *rev. denied* 300 Kan. 1104 (2014) (officer's testimony, without any additional explanation, that he wanted to talk to defendant "for my safety" insufficient to justify warrantless search).

The district court's order suppressing the evidence is reversed.

The parties do not address whether Officer Larson had probable cause to arrest Robertson assuming the investigatory detention was proper. However, because Robertson told Officer Larson she was 18 years old and admitted to drinking four shots of Jagermeister, Officer Larson would have had probable cause to arrest Robertson for being a minor in possession and/or for consumption of alcohol after Robertson told Officer Larson her age and admitted to drinking.

The district court erred in sustaining the motion to suppress the evidence that supported the three charges of the complaint—possession and/or consumption of alcohol by a minor, possession of marijuana, and possession of drug paraphernalia.

We reverse and remand for further proceedings consistent with this decision.

Reversed and remanded.